

655 N. Central Ave., Suite 2100
Glendale, CA  91203
t: 818-245-1010
f: 818-245-1750
License ##0D44433

# COMMERCIAL LINES DECLARATIONS PAGE

**COVERAGE TYPE:** Renewal

**ACCOUNT NUMBER:** AIN32054

**INSURANCE CARRIERS:** See attached Appendix for schedule of Participating Insurance Companies and Policy Numbers

**ACCOUNT NAME:** CG Amber Woods Apartments LLC (See attached Schedule of Properties for named insured information if applicable)

**ACCOUNT MAILING ADDRESS:** P.O. Box 498484 , Cincinnati, OH  45249-

**COVERAGE PERIOD:** 4/27/2017-4/27/2018 at 12:01 A.M. Standard Time

**PRODUCER:** Neace & Associ. Ins. Agency of OH, Inc.-Cincinnati
5905 E. Galbraith Road
Cincinnati, OH  45236

**BUSINESS DESCRIPTION:** Commercial Real Estate

***IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS COVERAGE,
WE AGREE TO PROVIDE THE INSURANCE AS STATED BELOW***

**COVERAGE CONSISTS OF THE FOLLOWING PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS
PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| Coverage Part/Form | Coverage Limit | Deductible | Gross Premium | Non-Taxable Gross Premium | Taxable Gross Premium | Surplus Lines Tax/Fees |
|---|---|---|---|---|---|---|
| Commercial Property | See Attached Schedules | See Attached Schedules | $14,396.00 | $46.00 | $14,350.00 | $717.50 |
| Commercial General Primary Liability | $1m per occurrence/$2m aggregate | See Attached Schedules | $3,275.00 | $0.00 | $3,275.00 | $163.75 |
| Commercial General Excess Liability | NOT COVERED | | | | | |
| Commercial General Excess Liability | NOT COVERED | | | | | |
| Commercial General Excess Liability | NOT COVERED | | | | | |
| Commercial General Excess Liability | NOT COVERED | | | | | |
| Non Profit Excess D&O Liability | NOT COVERED | | | | | |
| Commercial Crime Coverage | NOT COVERED | | | | | |
| Cyber One Network Security | $50,000 aggregate per account | $5,000 per occurrence | Included | | | |
| Data Compromise - Response Expense | $50,000 aggregate per account | $2,500 per occurrence | Included | | | |
| Data Compromise - Defense & Liability | $50,000 aggregate per account | $2,500 per occurrence | Included | | | |
| Equipment Breakdown | $7,500,000 per location | See Attached Schedules | Included | | | |
| DIC - Earthquake & Flood | NOT COVERED | | | | | |
| Pollution Liability | NOT COVERED | | | | | |
| TRIA - Property | NOT COVERED | | | | | |
| TRIA - Liability | NOT COVERED | | | | | |
| **TOTAL PREMIUM DUE AT INCEPTION:** | | | **$17,671.00** | **$46.00** | **$17,625.00** | **$881.25** |

See attached schedule of properties for a list of endorsements that apply to form coverage for this account.

Countersigned

By _____
*Julie Kim*
Authorized Representative

PLAINTIFF'S
EXHIBIT
A
exhibitsticker.com

# CG Amber Woods Apartments LLC

## AIN: 32054

### Schedule of Locations

**PID:** P00060091 **Status:** Renewed **Appendix:** BP-E **Terrorism:** No **Property Program:** Residential-E

**Deductible:** $25,000 Per Occ/Per Loc unless otherwise endorsed

**Named Insured:** CG Amber Woods Apartments LLC

**Property Address:** 7803, 7809, 7815, 7821 Dawn Road, Cincinnati, OH 45237-0000 **RPV:** $4,050,000 **LOI:** $237,000 **BPP:** $0 **RPP:** $0 **TIV:** $4,287,000

**Property Type:** Habitational **Construction:** ISO 2 - Joisted Masonry **Built:** 1959 **Bldgs:** 004 Bldgs + 000 Park **Stories:** 002 Flrs + 000 Bsmt + 001 Park **Sprk:** None

**Active Endorsements:** 03 CCE-001 CO 0317, 01 BRC-100 LI 0317, 01 DCI-500 LI 0317, 01 RAC-015 LI 0317, 01 MEP-025 O7 0317, 01 WAH-025 DE 0317

| | |
|---|---|
| **TAXABLE PROPERTY PREMIUM:** | $14,350.00 |
| **NON-TAXABLE PROPERTY PREMIUM:** | $46.00 |
| **TAXABLE PROPERTY TERRORISM:** | $0.00 |
| **NON-TAXABLE PROPERTY TERRORISM:** | $0.00 |
| **SURPLUS LINES TAXES:** | $717.50 |
| **STAMPING FEES:** | $0.00 |
| **FIRE MARSHALL TAX:** | $0.00 |
| **STATE SURCHARGES:** | $0.00 |
| **ADD'L STATE/MUNICIPAL CHARGES:** | $0.00 |

**TOTALS:**

| | |
|---|---|
| **TAXABLE PROPERTY PREMIUM:** | $14,350.00 |
| **NON-TAXABLE PROPERTY PREMIUM:** | $46.00 |
| **TAXABLE PROPERTY TERRORISM:** | $0.00 |
| **NON-TAXABLE PROPERTY TERRORISM:** | $0.00 |
| **SURPLUS LINES TAXES:** | $717.50 |
| **STAMPING FEES:** | $0.00 |
| **FIRE MARSHALL TAX:** | $0.00 |
| **STATE SURCHARGES:** | $0.00 |
| **ADD'L STATE/MUNICIPAL CHARGES:** | $0.00 |

LEGEND OF ABBREVIATIONS:
RPV: Real Property Value
LOI: Loss of Income Value
BPP: Business Personal Property Value
RPP: Real Property Parking Value
TIV: Total Insurable Value

AIN: 32054P

**CG Amber Woods Apartments LLC**
**AIN: 32054**
**Schedule of Mortgagees**

| PID | Property Address | Mortgagee Name | Address | City | State | ZIP | Loan No | Mort Int No | Loss Payee | 438BFUNS |
|---|---|---|---|---|---|---|---|---|---|---|
| P00060091 | 7803, 7809, 7815, 7821 Dawn Road Cincinnati, OH 45237-0000 | Wells Fargo Bank NA, as Trustee for the registered holders of LSTAR Commercial Mortgage Trust 2014-2, Commercial Mortgage Pass-Through Certificates, Series 2014-2, its successors and/or assigns Midland Loan Services, a PNC Real Estate Business | P.O. Box 25965 | Shawnee Mission | KS | 66225-5965 | 030306681 | 1 | Yes | Yes |

AIN: 32054P

**TO BE ATTACHED TO AND FORM PART OF THE EVIDENCE OR CERTIFICATE OF INSURANCE ISSUED TO:**

## CG Amber Woods Apartments LLC et al per attached schedule

| | |
|---|---|
| Applicable To: AIN/PID Number: Refer to Schedule | Property |
| Policy Number: Refer to Appendix | 01 BRC-100 LI 0317 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# REAL PROPERTY REPLACEMENT COST LIMITATION (100% of Scheduled Value)

In consideration of a premium charged, it is agreed that following coverage change applies, but only to coverage provided at insured locations identified by "Property Identification Numbers" where the Declarations Page or Evidence of Commercial Property Insurance issued to the Named Insured by CIBA Insurance Services states that this endorsement applies.

The following limitations apply only to Real Property at the location described in the Declarations Page or Evidence of Commercial Property Insurance to which this endorsement is attached:

1. The Limit of Insurance for Real Property is 100% of the Real Property Value and Real Property Parking Value (if applicable) for the location that is stated under "Schedule of Locations" in Page 2 of the Declarations Page or Evidence of Commercial Property Insurance to which this endorsement is attached.

2. Any amount payable under the applicable sublimit for Demolition Cost and Increased Cost of Construction is part of and not addition to the Limit of Insurance for Real Property.

3. Section 9. VALUATION, paragraph d. (3) in the All Risk Property Coverage Form is amended to read:
    (3) The Company will not pay more on a replacement cost basis than the least of
      (a) The cost to replace, on the same site, the lost or damaged real property with other property of comparable material and quality which is used for the same purpose; or
      (b) The amount actually spent by the Insured that is necessary to repair or replace the lost or damaged property.
      (c) 100% of the Real Property Value and Real Property Parking Value (if applicable) for the location that is stated under "Schedule of Locations" in Page 2 of the Declarations Page or Evidence of Commercial Property Insurance to which this endorsement is attached.
_____

IMPORTANT NOTICE:

This policy may not provide full replacement cost coverage in the event of damage to or destruction of covered property. The Building Replacement Cost Limitation endorsement caps the policy Real Property limit at 100% of the Real Property and Real Property Parking Value (if applicable) for the locations listed on the Schedule of Locations. The Real Property value declared by you is an estimated replacement cost figure based on general information about the insured property. This is not a guarantee that this figure will represent the actual cost to replace the property of it is significantly damaged or destroyed. The actual replacement cost can be impacted by multiple factors including inflation, improvements to the property, and the increased cost of building materials and supplies after a wide-spread disaster. It is your responsibility to select the appropriate Real Property value. If you have questions or concerns regarding the Real Property Value, you should consider obtaining a real estate appraisal or contractor estimate of the Real Property's replacement cost.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned

By: _____

## CG Amber Woods Apartments LLC et al per attached schedule

| | |
|---|---|
| Applicable To: AIN/PID Number: Refer to Schedule | Property |
| Policy Number: Refer to Appendix | 01 DCI-500 LI 0317 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEMOLITION, ICC, INCREASED LOSS OF INCOME DUE TO BUILDING ORDINANCE COMBINED SINGLE SUB-LIMIT

In consideration of a premium charged, it is agreed that following coverage change applies, but only to coverage provided at insured locations identified by "Property Identification Numbers" where the Declarations Page or Evidence of Commercial Property Insurance issued to the Named Insured by CIBA Insurance Services states that this endorsement applies.

It is hereby agreed that all coverage for building ordinance coverages:

B.  Demolition

C.  Increased Cost of Construction

D.  Increased Loss of Income

are subject to a single, combined sublimit of $500,000 for the property to which this endorsement applies.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned

By: _____

# CG Amber Woods Apartments LLC et al per attached schedule

Applicable To: AIN/PID Number: Refer to Schedule                                          Property
Policy Number: Refer to Appendix                                                          01 MEP-025 OT 0317

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM

In consideration of a premium charged, it is agreed that following coverage change applies, but only to coverage provided at insured locations identified by "Property Identification Numbers" where the Declarations Page or Evidence of Commercial Property Insurance issued to the Named Insured by CIBA Insurance Services states that this endorsement applies.

A minimum earned premium equal to twenty five per cent (25%) of the annual premium applies to the Declarations Page or Evidence of Commercial Property Insurance to which this endorsement is attached, once the Declarations Page or Evidence of Commercial Property Insurance becomes effective.  No flat cancellation is allowed.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned                                                          By: _____

**CG Amber Woods Apartments LLC et al per attached schedule**

| | |
|---|---|
| Applicable To: AIN/PID Number: Refer to Schedule | Property |
| Policy Number: Refer to Appendix | 01 RAC-015 LI 0317 |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ROOF - ACTUAL CASH VALUE LIMITATION (Older Than 15 Years)

In consideration of a premium charged, it is agreed that following coverage change applies, but only to coverage provided at insured locations identified by "Property Identification Numbers" where the Declarations Page or Evidence of Commercial Property Insurance issued to the Named Insured by CIBA Insurance Services states that this endorsement applies.

If the roof coverings at the insured location are older than 15 years at the time of loss or damage, the following limitation will apply.

In respects to the perils of wind or hail, coverage for roof coverings is hereby amended as follows:

Actual cash valuation

With respects to valuation of the roof covering, the replacement cost value is deleted and replaced with actual cash value.

Definitions:

Roof covering means:

1.  The roof material exposed to the weather
2.  The underlayments applied for moisture protection;
3.  All flashings required in the replacement of a roof covering

Actual cash value means:

The cost to repair or replace the damaged property with material of like kind and quality with proper deduction for depreciation; at the time of loss, consideration will be given to the age, condition and maintenance of the damaged property.

In the event that the Insured cannot produce documentary proof that roofs at an insured location were 15 years old or less at the time of loss or damage, the insurer will engage a qualified, independent roofing expert who will estimate the age of the roofs at the insured premises.  If the expert estimates that any of the roofs at the insured premises are older than 15 years, the above limitation will apply.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned

By: _Julie Kim_

Case 1:18-cv-00912-RSB Doc # 1-1 Filed: 07/23/18 Page 8 of 86 PageID #: 11

# CG Amber Woods Apartments LLC et al per attached schedule

| | |
|---|---|
| Applicable To: AIN/PID Number: Refer to Schedule | Property |
| Policy Number: Refer to Appendix | 01 WAH-025 DE 0317 |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WIND AND/OR HAIL DEDUCTIBLE

In consideration of a premium charged, it is agreed that following coverage change applies, but only to coverage provided at insured locations identified by "Property Identification Numbers" where the Declarations Page or Evidence of Commercial Property Insurance issued to the Named Insured by CIBA Insurance Services states that this endorsement applies.

"Wind and/or Hail" Deductible:    $25,000 per location per occurrence

It is agreed that the above deductible shall apply to loss or damage caused directly or indirectly by or resulting from the perils of wind, wind driven rain, hail, and any resultant water damage regardless of any other cause or event that contributes concurrently or in any sequence to such loss or damage for the property referenced in the attached Declarations Page or Evidence of Commercial Property Insurance.

Any exclusion or deductible for "Named Windstorm" that applies to location(s) where this endorsement also applies will supersede this endorsement as respect loss or damage from "Named Windstorm".

Definitions:

1. "Named Windstorm"

"Named Windstorm" is a storm that has been designated and named by the National Weather Service, including Hurricane and/or Tropical Storm.

2. "Wind and /or Hail"

Wind and/or Hail" means the direct and/or indirect action of wind and/or hail and all loss or damage resulting there from whether caused by wind, by hail or by any other peril, other than fire or explosion, including, but not limited to, loss or damage caused when water, in any state, or rain, or sleet, or snow, or sand, dust or any other substance, material or object is carried, blown, driven or otherwise transported by wind and/or hail onto or into the property insured.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned

By: _Julie Kim_

Case 1:18-cv-00512-RSB Doc # 1 Filed 07/23/18 Page 9 of 86 PAGEID #: 12

# CG Amber Woods Apartments LLC et al per attached schedule

| | |
|---|---|
| Applicable To: AIN/PID Number: Refer to Schedule | Property |
| Policy Number: Refer to Appendix | 03 CCE-001 CO 0317 |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CYBERONE COVERAGE AND DATA COMPROMISE COVERAGE

In consideration of a premium charged, it is agreed that following coverage change applies, but only to coverage provided at insured locations identified by "Property Identification Numbers" where the Declarations Page or Evidence of Commercial Property Insurance issued to the Named Insured by CIBA Insurance Services states that this endorsement applies.

CyberOne Coverage (Network Security Liability) and Data Compromise Coverage (Response Expenses and Defense and Liability) are included as provided in the following coverage forms:

CyberOne Coverage - Form Number 01 C1 0314
Data Compromise Coverage - Form Number 03 DC 0314

Limits Apply "Per Account - Not "Per Location"
If a covered cause of loss occurs at more than one location in the same occurrence, the Limits of Liability in the CyberOne Coverage Form and the Data Compromise Coverage Form are the most that the Company will pay for each "Account", irrespective of the number of locations included in an "Account".

Definition:

"Account" means the sum of all insured locations that are identified with the same Account Identification Number (AIN) in the Declarations Page or Evidences Of Commercial Property Insurance that are issued for those insured locations.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned                                                    By: _____

## APPENDIX BP-E
### BASIC PROPERTY - E

### COMMERCIAL INDUSTRIAL BUILDING OWNER'S ALLIANCE, INC.
March 31, 2017 - March 31, 2019

### SCHEDULE OF PARTICIPATING INSURANCE COMPANIES

**The CIBA program provides each Insured their own individual limits as specified on the Declaration page of the Member policy.**

The Schedule below sets forth the participating insurers to the Insurance Program provided as part of your membership with CIBA. The Limits set forth below are a combination of 'Program Limits' where carriers provide a combined limit for all insureds involved in a single loss occurrence and 'Insured Specific Limits' where certain carriers provide limits to each Insured individually for each single loss occurrence.

For any insurer set forth below, whose participation is subject to an aggregate Limit for any specific peril, coverage, or participation, then that Limit is the maximum amount payable to all CIBA Named Insureds combined for the term for the contract identified below, for that Insurers participation. Once that Limit has been exhausted in accordance with the Policy contract terms, then the insurer set forth below will no longer have any further Liability under this Insurance contract.

Notwithstanding the Limits set forth below, the individual limits and sublimits set forth in the Member Insurance Contract (AIN), to which this Schedule is attached and incorporated therein by reference, are the only limits available for any one Named Insured and their identified insured locations(s) identified by the property identification numbers (PID).

| Layer | Market | Perils | Limit | Policy # | Admitted Non-Admitted |
|---|---|---|---|---|---|
| **ALL RISK - PER OCCURRENCE, WITH UNLIMITED REINSTATEMENTS DURING THE POLICY PERIOD** | | | | | |
| **PRIMARY $3M** | | | | | |
| | EVEREST INDEMNITY INSURANCE COMPANY | AR EXCL EQ FL | $3,000,000 | CA3P005794171 | Non-Admitted |
| **EXCESS LIMIT $7M x $3M** | | | | | |
| | ASPEN SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $1,000,000 | PXAG9R817 | Non-Admitted |
| | EVEREST INDEMNITY INSURANCE COMPANY | AR EXCL EQ FL | $2,625,000 | CA3X000837171 | Non-Admitted |
| | FIRST SPECIALTY INSURANCE CORPORATION | AR EXCL EQ FL | $875,000 | ESP 2002142 00 | Non-Admitted |
| | IRONSHORE SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $525,000 | 002712001 | Non-Admitted |
| | LIBERTY SURPLUS INSURANCE CORPORATION | AR EXCL EQ FL | $1,975,000 | 1000255846-01 | Non-Admitted |
| | | | **$7,000,000** | | |
| **EXCESS LIMIT $25M x $10M** | | | | | |
| | ASPEN SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $4,500,000 | PXA9U1W17 | Non-Admitted |
| | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON - BRIT SYNDICATE 2987 | AR EXCL EQ FL | $5,000,000 | PD-10157-03 | Non-Admitted |
| | EVANSTON INSURANCE COMPANY | AR EXCL EQ FL | $2,750,000 | MKLV11XP005614 | Non-Admitted |
| | HOMELAND INSURANCE COMPANY OF NEW YORK | AR EXCL EQ FL | $1,500,000 | 795005772 | Non-Admitted |
| | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON - HISCOX SYNDICATE 3624 | AR EXCL EQ FL | $1,500,000 | URS2542823.17 | Non-Admitted |
| | IRONSHORE SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $5,000,000 | 001961203 | Non-Admitted |
| | COLONY INSURANCE COMPANY | AR EXCL EQ FL | $4,750,000 | XP264069 | Non-Admitted |
| | | | **$25,000,000** | | |
| **EXCESS LIMIT $25M x $35M** | | | | | |
| | COLONY INSURANCE COMPANY | AR EXCL EQ FL | $5,000,000 | XP264068 | Non-Admitted |
| | EVANSTON INSURANCE COMPANY | AR EXCL EQ FL | $8,875,000 | MKLV11XP005614 | Non-Admitted |
| | FIRST SPECIALTY INSURANCE CORPORATION | AR EXCL EQ FL | $2,625,000 | ESP 2002142 00 | Non-Admitted |
| | HOMELAND INSURANCE COMPANY OF NEW YORK | AR EXCL EQ FL | $5,000,000 | 795005773 | Non-Admitted |
| | HALLMARK SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $3,500,000 | 73PRX179CB7 | Non-Admitted |
| | | | **$25,000,000** | | |
| **EXCESS LIMIT $90M x $60M** | | | | | |
| | HOMELAND INSURANCE COMPANY OF NEW YORK | AR EXCL EQ FL | $5,500,000 | 795005774 | Non-Admitted |
| | FIRST SPECIALTY INSURANCE CORPORATION | AR EXCL EQ FL | $10,000,000 | ESP 2002142 00 | Non-Admitted |
| | COLONY INSURANCE COMPANY | AR EXCL EQ FL | $5,000,000 | XP264068 | Non-Admitted |
| | EVEREST INDEMNITY INSURANCE COMPANY | AR EXCL EQ FL | $35,000,000 | CA3X000837171 | Non-Admitted |
| | IRONSHORE SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $10,000,000 | 001961303 | Non-Admitted |
| | ROCKHILL INSURANCE COMPANY | AR EXCL EQ FL | $24,500,000 | RCPXRU000045-00 | Non-Admitted |

| Layer | Market | Perils | Limit | Policy # | Admitted Non-Admitted |
|---|---|---|---|---|---|
| | | | $90,000,000 | | |
| **EXCESS LIMIT $100M x $150M** | | | | | |
| | HOMELAND INSURANCE COMPANY OF NEW YORK | AR EXCL EQ FL | $13,000,000 | 795005775 | Non-Admitted |
| | COLONY INSURANCE COMPANY | AR EXCL EQ FL | $5,000,000 | XP264068 | Non-Admitted |
| | MUNICH RE UK SERVICES LIMITED | AR EXCL EQ FL | $20,000,000 | B1230AP01952A17 | Non-Admitted |
| | EVEREST INDEMNITY INSURANCE COMPANY | AR EXCL EQ FL | $14,750,000 | CA3X000837171 | Non-Admitted |
| | EVANSTON INSURANCE COMPANY | AR EXCL EQ FL | $2,000,000 | MKLV11XP005614 | Non-Admitted |
| | FIRST SPECIALTY INSURANCE CORPORATION | AR EXCL EQ FL | $21,000,000 | ESP 2002142 00 | Non-Admitted |
| | IRONSHORE SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $24,250,000 | 001961503 | Non-Admitted |
| | | | $100,000,000 | | |
| **EXCESS LIMIT $250M x $250M** | | | | | |
| | ASPEN SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $18,500,000 | PXAC92U17 | Non-Admitted |
| | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON - BRIT SYNDICATE 2987 | AR EXCL EQ FL | $16,500,000 | PD-10157-03 | Non-Admitted |
| | HOMELAND INSURANCE COMPANY OF NEW YORK | AR EXCL EQ FL | $15,000,000 | 795005771 | Non-Admitted |
| | LIBERTY SURPLUS INSURANCE CORPORATION | AR EXCL EQ FL | $47,000,000 | 1000255888-01 | Non-Admitted |
| | MUNICH RE UK SERVICES LIMITED | AR EXCL EQ FL | $50,000,000 | B1230AP01952A17 | Non-Admitted |
| | COLONY INSURANCE COMPANY | AR EXCL EQ FL | $25,000,000 | XP264069 | Non-Admitted |
| | IRONSHORE SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $25,000,000 | 003107500 | Non-Admitted |
| | SCOTTSDALE INSURANCE COMPANY | AR EXCL EQ FL | $28,000,000 | AJS0000510 | Non-Admitted |
| | STEADFAST INSURANCE COMPANY | AR EXCL EQ FL | $25,000,000 | XPP5532866-03 | Non-Admitted |
| | | | $250,000,000 | | |
| **EXCESS LIMIT $250M x $500M** | | | | | |
| | MITSUI SUMITOMO INSURANCE COMPANY of AMERICA | AR EXCL EQ FL | $100,000,000 | EXP7000151 | Admitted |
| | HOMELAND INSURANCE COMPANY OF NEW YORK | AR EXCL EQ FL | $25,000,000 | 795005776 | Non-Admitted |
| | NATIONAL FIRE & MARINE INSURANCE COMPANY | AR EXCL EQ FL | $25,000,000 | 92GFP0100 | Non-Admitted |
| | UNITED NATIONAL INSURANCE COMPANY | AR EXCL EQ FL | $30,000,000 | LP0000888 | Non-Admitted |
| | UNITED NATIONAL INSURANCE COMPANY | AR EXCL EQ FL | $3,000,000 | LP0000888 | Non-Admitted |
| | SCOTTSDALE INSURANCE COMPANY | AR EXCL EQ FL | $67,000,000 | AJS0000510 | Non-Admitted |
| | | | $250,000,000 | | |
| **EXCESS LIMIT $250M x $750M** | | | | | |
| | LANDMARK AMERICAN INSURANCE COMPANY | AR EXCL EQ FL | $75,000,000 | LHD399814 | Non-Admitted |
| | INDIAN HARBOR INSURANCE COMPANY | AR EXCL EQ FL | $25,000,000 | PRO0037150-05 | Non-Admitted |
| | HOMELAND INSURANCE COMPANY OF NEW YORK | AR EXCL EQ FL | $85,000,000 | 795005777 | Non-Admitted |
| | FIRST SPECIALTY INSURANCE CORPORATION | AR EXCL EQ FL | $15,000,000 | ESP 2002142 00 | Non-Admitted |
| | ASPEN SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $25,000,000 | PX005JP17 | Non-Admitted |
| | NATIONAL FIRE & MARINE INSURANCE COMPANY | AR EXCL EQ FL | $25,000,000 | 92GFP0100 | Non-Admitted |
| | | | $250,000,000 | | |
| | **SUPPLEMENTAL LIMITS** | | | | |
| **ADDITIONAL EXCESS** | | | | | |
| | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON - BRIT SYNDICATE 2987 | AR EXCL EQ FL | $3,500,000 | PD-10157-03 | Non-Admitted |
| | EVEREST INDEMNITY INSURANCE COMPANY | AR EXCL EQ FL | $3,500,000 | CA3X001111171 | Non-Admitted |
| | | | $7,000,000 | | |
| **ADDITIONAL EXCESS** | | | | | |
| | COLONY INSURANCE COMPANY | AR EXCL EQ FL | $3,000,000 | XP264050 | Non-Admitted |
| **ADDITIONAL EXCESS** | | | | | |
| | ASPEN SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $428,580 | PXAG9R817 | Non-Admitted |
| | EVEREST INDEMNITY INSURANCE COMPANY | AR EXCL EQ FL | $1,125,000 | CA3X000837171 | Non-Admitted |
| | FIRST SPECIALTY INSURANCE CORPORATION | AR EXCL EQ FL | $375,000 | ESP 2002142 00 | Non-Admitted |
| | IRONSHORE SPECIALTY INSURANCE COMPANY | AR EXCL EQ FL | $225,000 | 002712001 | Non-Admitted |
| | LIBERTY SURPLUS INSURANCE CORPORATION | AR EXCL EQ FL | $846,420 | 1000255846-01 | Non-Admitted |
| | | | $3,000,000 | | |
| **ADDITIONAL EXCESS** | | | | | |
| | SCOTTSDALE INSURANCE COMPANY | AR EXCL EQ FL | $3,500,000 | AJS0000510 | Non-Admitted |

| Layer | Market | Perils | Limit | Policy # | Admitted Non-Admitted |
|---|---|---|---|---|---|
| | EVEREST INDEMNITY INSURANCE COMPANY | AR EXCL EQ FL | $3,500,000 | CA3X000837171 | Non-Admitted |
| | | | $7,000,000 | | |
| **INSURED SPECIFIC LIMITS** | | | | | |
| The following markets provide "individual limits" up to the limits stated in the Declarations Page of the Member Insurance Contract (AIN), but in no event will the total of all "individual limits" for a CIBA Member Insurance Contract (AIN) exceed a maximum limit of $150,000,000 per occurrence, regardless of the number of locations involved in the occurrence. | | | | | |
| | GREAT LAKES INSURANCE SE | AR EXCL EQ FL | $150,000,000 | B1230AP04387A16 | Non-Admitted |
| As respects loss or damage from "Named Windstorm" at locations in "Tier 1 and 2 Counties" as defined in the policy, if the Member Insurance Contract (AIN) is extended to include "Named Windstorm" in "Tier 1 and 2 Counties", then in no event will the Member Insurance Contract (AIN) limit for Named Windstorm exceed $100,000,000 per occurrence. | | | | | |
| | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON | AR EXCL EQ FL | $25,000,000 | B1230AP03105A17 | Non-Admitted |
| | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON | AR EXCL EQ FL | $25,000,000 | B1230AP03105C17 | Non-Admitted |
| | CERTAIN UNDERWRITERS AT LLOYD'S, LONDON | AR EXCL EQ FL | $50,000,000 | B1230AP03105D17 | Non-Admitted |
| | | | $100,000,000 | | |
| **$7.5 MILLION EQUIPMENT BREAKDOWN** | | | | | |
| | GREAT LAKES INSURANCE SE / HARTFORD STEAM BOILER | B&M | $7,500,000 | 059488-01-16 | Non-Admitted |
| **CYBER INSURANCE – Data Compromise:** | | | | | |
| **(1) Response Expense $50,000 AIN Aggregate** | | | | | |
| **(2) Defense & Liability $50,000 AIN Aggregate** | | | | | |
| **(3) Network Security Liability $50,000 AIN Aggregate** | | | | | |
| | GREAT LAKES INSURANCE SE / HARTFORD STEAM BOILER | | | 059488-01-16 | Non-Admitted |

## Several Liability:

### PLEASE NOTE – This notice contains important information. PLEASE READ CAREFULLY

The liability of an insurer under this contract is several and not joint with other insurers party to this contract. An insurer is liable only for the proportion of liability it has underwritten. An insurer is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown above.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

DISCLAIMER: COVERAGES APPLICABLE FOR THE EFFECTIVE AND EXPIRATION DATES AS SPECIFIED IN THE MEMBER INSURANCE CONTRACT (AIN). PLEASE CHECK WWW.CIBASERVICES.COM FOR THE MOST UP-TO-DATE APPENDICES

# CG Amber Woods Apartments LLC

## AIN: 32054

### Schedule of Locations

**PID:** P00060091   **Status:** Renewed   **Appendix:** PL   **Terrorism:** No   **Policy Term:** 04/27/2017 - 04/27/2018   **Liability Program:** PmyLiability

**Deductible:** $2,500.00 unless otherwise endorsed

**Named Insured:** CG Amber Woods Apartments LLC

**Property Address:** 7803, 7809, 7815, 7821 Dawn Road, Cincinnati, OH 45237-0000

**Property Type:** Habitational   **No. of Units:** 44   **No. of Pools:** 0   **Ind./Comm. Sq Ft:** 0   **Retail Sq Ft:** 0   **Res. Sq Ft:** 54,000   **Parking Sq Ft:** 0

**Active Endorsements:** 02 MPF-001 CO 0317, 02 AN1-001 EX 0317, 02 DWP-001 EX 0317, 02 MEP-025 OT 0317, CG 21 73 01 15

| | | | |
|---|---|---|---|
| TAXABLE LIABILITY PREMIUM: | $3,275.00 | SURPLUS LINES TAXES: | $163.75 |
| NON-TAXABLE LIABILITY PREMIUM: | $0.00 | STAMPING FEES: | $0.00 |
| TAXABLE LIABILITY TERRORISM: | $0.00 | FIRE MARSHALL TAX: | $0.00 |
| NON-TAXABLE LIABILITY TERRORISM: | $0.00 | STATE SURCHARGES: | $0.00 |
| | | ADD'L STATE/MUNICIPAL CHARGES: | $0.00 |

**TOTALS:**

| | | | |
|---|---|---|---|
| TAXABLE LIABILITY PREMIUM: | $3,275.00 | SURPLUS LINES TAXES: | $163.75 |
| NON-TAXABLE LIABILITY PREMIUM: | $0.00 | STAMPING FEES: | $0.00 |
| TAXABLE LIABILITY TERRORISM: | $0.00 | FIRE MARSHALL TAX: | $0.00 |
| NON-TAXABLE LIABILITY TERRORISM: | $0.00 | STATE SURCHARGES: | $0.00 |
| | | ADD'L STATE/MUNICIPAL CHARGES: | $0.00 |

AIN: 32054L

**CG Amber Woods Apartments LLC**

**AIN: 32054**

**Schedule of Additional Insureds and Certificate Holders**

| PID | Property Address | Mortgagee Name | Address | City | State | ZIP | Reference No | Addl Int No | Cert Holder |
|-----|------------------|----------------|---------|------|-------|-----|--------------|-------------|-------------|

*No mortgages on file for this location.*

AIN: 32054L

THIS FORM IS NOT A PART OF THE POLICY OR CERTIFICATE OF INSURANCE ISSUED TO

**CG Amber Woods Apartments LLC et al per attached schedule**

| | |
|---|---|
| Applicable To: AIN/PID Number: Refer to Schedule | Liability |
| Policy Number: Refer to Appendix | 02 ANI-001 EX 0317 |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DOMESTIC ANIMAL LIABILITY

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

   - COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of a premium charged, it is agreed that the following coverage change applies, but only with respect to coverage provided at all locations where The Commercial Industrial Building Owner's Alliance ("CIBA") has issued a Declarations Page or a Certificate of Liability Insurance to the insured Associate and/or Additional Insured and such Certificate states that this endorsement applies:

A.  SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE, Paragraph 2.
    Exclusions, and SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY, Paragraph
    2. Exclusions, are amended to include the following:

    Liability for Animals

    This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury"
    arising out of or resulting from any domestic animal, including bites, attacks or diseases.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned

By: _Julie Kim_ _____

TO BE ATTACHED TO AND FORM PART OF THE EVIDENCE OR CERTIFICATE OF INSURANCE ISSUED TO:
Case: 1:18-cv-00512-TSB Doc #: 1-1 Filed: 07/25/18 Page: 16 of 86 PAGEID #: 19
CG Amber Woods Apartments LLC et al per attached schedule

| Applicable To: AIN/PID Number: Refer to Schedule | Liability |
|---|---|
| Policy Number: Refer to Appendix | 02 DWP-001 EX 0317 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DESIGNATED WORK PERFORMED (RESIDENTIAL WORK - INCLUDING APARTMENT CONVERSIONS) ENDORSEMENT

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

- COMMERCIAL GENERAL LIABILITY COVERAGE PART
- PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

In consideration of a premium charged, it is agreed that the following coverage change applies, but only with respect to coverage provided at all locations where The Commercial Industrial Building Owner's Alliance ("CIBA") has issued a Declarations Page or a Certificate of Liability Insurance to the Insured Associate and/or Additional Insured and such Certificate states that this endorsement applies:

1. SECTION I - COVERAGES, COVERAGE A BODILY AND PROPERTY DAMAGE LIABILITY, Paragraph 2. Exclusions, is amended to include the following:

   This insurance does not apply to "bodily injury" or "property damage" based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving "your work" during the course of converting property to any "residential property".

   This exclusion applies to any properties or buildings that are now being converted or have been converted by anyone to "residential" occupancy.

2. SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, Paragraph 2. Exclusions, is amended to include the following:

   This insurance does not apply to "personal and advertising injury" based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving "your work" during the course of converting property to any "residential property".

   This exclusion applies to any properties or buildings that are now being converted or have been converted by anyone to "residential" occupancy.

3. SECTION V - DEFINITIONS is amended to include the following:

   "Residential property" means: (i) single family dwellings and single units of residential properties; (ii) condominiums; (iii) town homes or townhouses; (iv) planned unit developments; (v) row houses; (vi) co-operative housing; (vii) villas within a condominium association or homeowners association; (viii) master-planned housing; (ix) tract homes; (x) mass-produced single family homes; (xi) custom-built homes; and (xii) multi-family housing, intended for human residency.

   "Residential property" shall not include:
   (1) Apartment buildings that do not have any owner occupied units; or
   (2) Apartment buildings in which all of the individual units are rented.

"Your Work" means:
   1) Work or operations performed by you or on your behalf; and
   2) Materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes:
   1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" and
   2) The providing of or failure to provide warnings or instructions.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned

By: _Julie Kim_

TO BE ATTACHED TO AND FORM PART OF THE EVIDENCE OR CERTIFICATE OF INSURANCE ISSUED TO:
**CG Amber Woods Apartments LLC et al per attached schedule**

| | |
|---|---|
| Applicable To: AIN/PID Number: Refer to Schedule | Liability |
| Policy Number: Refer to Appendix | 02 MEP-025 OT 0317 |

<u>**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**</u>

<u>**MINIMUM EARNED PREMIUM ENDORSEMENT**</u>

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

- COMMERCIAL GENERAL LIABILITY COVERAGE PART

In consideration of a premium charged, it is agreed that the following coverage change applies, but only with respect to coverage provided at all locations where The Commercial Industrial Building Owner's Alliance ("CIBA") has issued a Declarations Page or a Certificate of Liability Insurance to the insured Associate and/or Additional Insured and such Certificate states that this endorsement applies:

A minimum earned premium equal to twenty five per cent (25%) of the annual premium applies to the Certificate of Liability Insurance to which this endorsement is attached, once the Certificate becomes effective. No flat cancellation is allowed.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

Countersigned

By: *Julie Kim*

TO BE ATTACHED TO AND FORM PART OF THE EVIDENCE OF INSURANCE OR CERTIFICATE OF INSURANCE ISSUED TO
CG Amber Woods Apartments LLC et al per attached schedule

| | |
|---|---|
| Applicable To: AIN/PID Number: Refer to Schedule | Liability |
| Policy Number: Refer to Appendix | 02 MPF-001 CO 0317 |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## GENERAL LIABILITY FORMS ENDORSEMENT

The following are the forms attached to and forming part of the policy at inception:

| FORM NUMBER | EDITION DATE | FORM TITLE | APPLIES TO THIS CERTIFICATE |
|---|---|---|---|
| ASPGL074 | 05 11 | Common Policy Declarations | YES |
| ASPGL075 | 05 11 | Commercial General Liability Declarations | YES |
| ASPCO98 | 02 13 | Signature Page | YES |
| IL0017 | 11 98 | Common Policy Conditions | YES |
| SN-CA | 06 12 | California Notice | YES |
| ASPGL006 | 01 04 | Schedule of Applicable Forms | YES |
| ASPCO002 | 02 13 | General Service Of Suit Notice | YES |
| ASPCO021 | 04 10 | OFAC Endorsement | YES |
| CG 00 01 | 12 07 | Commercial General Liability Coverage Form | YES |
| ASPGL001 | 01 04 | Asbestos Exclusion Endorsement | YES |
| ASPCBA 002 | 03 14 | Employee Definition Endorsement – Exclusion for Injury to Temporary Workers | YES |
| ASPCBA 006 | 03 14 | Course of Construction Liability Exclusion For Phased Projects | See Note 2 |
| ASPCBA 007 | 03 14 | Marine Exclusion Endorsement | See Note 2 |
| ASPCBA 008 | 03 14 | Hired Auto and Non-Owned Auto Liability Endorsement | YES |
| ASPCBA 009 | 03 14 | Cross Suits Exclusion Endorsement | YES |
| ASPCBA 010 | 03 14 | Infestation And Vermin Coverage Change Endorsement (Designated Location) | See Note 2 |
| ASPCBA 011 | 03 14 | Punitive or Exemplary Damages Exclusion Endorsement | YES |
| ASPCBA 012 | 03 14 | Personal And Advertising Injury Exclusion & Definition Change Endorsement | YES |
| ASPCBA 013 | 03 14 | Waiver of Subrogation Against Unit Owners Endorsement (Only Applicable To State of Maryland) | See Note 2 |
| ASPCBA 015 | 03 14 | Hired Auto And Non-Owned Auto Exclusion Endorsement | See Note 2 |
| ASPCBA 016 | 03 14 | Additional Insured Basic Primary Liability For Premises & Operations | See Note 2 |
| ASPCBA 017 | 03 14 | Additional Insured Endorsement | See Note 2 |
| ASPCBA 018 | 03 14 | Amendment to Per "Customer" Limit of Insurance For Customers' Goods Legal Liability And Sake And Disposal Endorsement | See Note 2 |
| ASPCBA 019 | 03 14 | Designated Work Performed (Residential Work – Including Apartment Conversions Endorsement | YES |
| ASPCBA 021 | 03 14 | Vacant Land Construction Activity Exclusion Endorsement | See Note 2 |
| ASPCBA 022 | 03 14 | Association Valet Parking Change Endorsement | See Note 2 |
| ASPCBA 023 | 03 14 | Weather Deductible Endorsement | See Note 2 |
| ASPCBA 024 | 03 14 | Domestic Animal Liability Endorsement | See Note 2 |
| ASPCBA 027 | 03 14 | Construction Operations Exclusion (With Non-Structural Improvement Exception) Endorsement | YES |
| ASPCBA 030 | 03 14 | Infestation And Vermin Exclusion Endorsement | YES |
| ASPCBA 031 | 03 14 | Named Insured Endorsement | YES |
| ASPCBA 032 | 03 14 | Stop Gap – Employers Liability Coverage Endorsement | YES |
| ASPGL003 | 01 04 | Total Lead Exclusion | YES |
| ASPGL007 | 01 04 | Silica Exclusion Endorsement | YES |
| ASPGL041 | 05 04 | Intellectual Property Infringement Exclusion | YES |
| ASPGL044 | 05 04 | Amendment – Common Policy Conditions | YES |
| ASPGL098 | 04 06 | Exclusion – Discrimination | YES |
| ASPGL114 | 1206 | Non-Duplication of Limits of Insurance Endorsement | YES |
| ASPGL164 | 06 13 | Continuous Or Progressive Injury or Damage Exclusion | YES |
| ASPCO023 | 10 12 | Nuclear, Biological, Chemical, Or Radiological Terrorism Exclusion | YES |
| CG 00 62 | 12 02 | War Exclusion | YES |
| CG 00 68 | 05 09 | Recording And Distribution Of Material Or Information In Violation Of Law | YES |
| CG 02 12 | 11 85 | Cancellation By Us | YES |
| CG 04 35 | 12 07 | Employee Benefits Liability Coverage | YES |

| CG 21 35 | 10 01 | Exclusion – Coverage C – Medical Payments | YES |
|----------|-------|-------------------------------------------|-----|
| CG 21 44 | 07 98 | Limitation Of Coverage To Designated Premises Or Project | YES |
| CG 21 47 | 12 07 | Employment – Related Practices Exclusion | YES |
| CG 21 65 | 12 04 | Total Pollution Exclusion with A Building Heating, Cooling and Dehumidifying Equipment Exception and Hostile Fire Exception | YES |
| CG 21 67 | 12 04 | Fungi or Bacteria Exclusion | YES |
| CG 21 70 | 01 15 | Cap on Losses from Certified Acts of Terrorism | See Note 1 |
| CG 21 73 | 01 15 | Exclusion of Certified Acts of Terrorism | See Note 1 |
| CG 24 26 | 07 04 | Amendment of Insured Contract Definition | YES |
| CG 25 04 | 05 09 | Designated Location(s) General Aggregate Limit | YES |
| IL 00 03 | 09 08 | Calculation of Premium | YES |
| IL 00 21 | 09 08 | Nuclear Energy Liability Exclusion Endorsement | YES |
| IL 09 85 | 01 15 | Disclosure Pursuant to Terrorism Risk Insurance Act | See Note 1 |
| ASPGL 139 | 10 12 | Policyholder's Guide to Reporting a Casualty Claim | YES |
| ASPCBA 001 | 03 14 | Commercial Storage Insurance Amendatory Endorsement | See Note 2 |
| ASPCBA 005 | 03 14 | Course Of Construction Liability Limitation Endorsement | See Note 2 |
| CG 21 16 | 07 98 | Exclusion – Designated Professional Services | YES |
| ASPCBA 033 | 03 14 | Deductible Liability Insurance | YES |
| ASPCBA 035 | 05 15 | Minimum Earned Premium Endorsement | YES |
| ASPCBA 036 | 06 15 | Medical Payments Change Endorsement (Designated Location) | See Note 2 |
| ASPCBA 037 | 07 15 | Habitability Exclusion Endorsement | See Note 2 |

|   | NOTES: |
|---|--------|
| 1. | Certified Terrorism Coverage - applies only if the Named Insured accepted Certified Terrorism Offer for the location specified in the Declarations Page or Certificate Of Liability Insurance and Certified Terrorism Premium is paid at inception of coverage. If the Named Insured does not accept the Certified Terrorism Offer for the location specified in the Declarations Page or Certificate of Liability Insurance, then the Exclusion of Certified Acts of Terrorism endorsement applies as respects that location. |
| 2. | Discretionary Endorsement – Applies Only if Specified in the Declarations Page or Certificate of Liability Insurance issued to the Named Insured by CIBA. |

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

Countersigned

By: _Julie Kim_ _____

TO BE ATTACHED TO AND FORM PART OF THE EVIDENCE OF CERTIFICATE OF INSURANCE ISSUED TO:
**CG Amber Woods Apartments LLC et al per attached schedule**

| Applicable To: AIN/PID Number: Refer to Schedule | Liability |
| Policy Number: Refer to Appendix | CG 21 73 01 15 |

<u>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.</u>

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

- COMMERCIAL GENERAL LIABILITY COVERAGE PART
- LIQUOR LIABILITY COVERAGE PART
- OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
- PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
- RAILROAD PROTECTIVE LIABILITY COVERAGE PART
- UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

TERRORISM

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Countersigned

By: _Julie Kim_ _____

## APPENDIX PL
### PRIMARY LIABILITY

COMMERCIAL INDUSTRIAL BUILDING OWNER'S ALLIANCE, INC.
March 31, 2017 - March 31, 2019

### SCHEDULE OF PARTICIPATING INSURANCE COMPANIES

| Layer | Market | Perils | Policy # | Admitted Non-Admitted |
|---|---|---|---|---|
| **PRIMARY $1 MILLION PER OCCURRENCE / $2 MILLION GENERAL AGGREGATE PER LOCATION** | | | | |
| | ASPEN SPECIALTY INSURANCE COMPANY | GL | CR005HN17 | Non-Admitted |
| **NON-OWNED & HIRED AUTOMOBILE LIABILITY $1 MILLION PER ACCIDENT / SUBJECT TO GENERAL AGGREGATE LIMIT** | | | | |
| | ASPEN SPECIALTY INSURANCE COMPANY | | CR005HN17 | Non-Admitted |

**DISCLAIMER: COVERAGES APPLICABLE FOR THE EFFECTIVE AND EXPIRATION DATES AS SPECIFIED IN THE MEMBER INSURANCE CONTRACT (AIN). PLEASE CHECK WWW.CIBASERVICES.COM FOR THE MOST UP-TO-DATE APPENDICES**

**THE INSURANCE HEREBY EVIDENCED IS WRITTEN BY AN APPROVED NON-LICENSED INSURER IN THE STATE OF OHIO AND IS NOT COVERED IN CASE OF INSOLVENCY BY THE OHIO INSURANCE GUARANTY ASSOCIATION.**

# NOTICE:

1. **THE INSURANCE POLICY THAT YOU ARE APPLYING TO PURCHASE IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

2. **THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

3. **THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

4. **THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**

5. **FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY**

CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

**D-1 (Effective July 21, 2011)**

**Words or phrases that appear in quotation marks have special meaning. Refer to Section 43. – Definitions.**

## CHOICE OF LAW AND JURISDICTION:

In the event of any dispute arising between the Named Insured and Insurer concerning this policy, the following Law and Jurisdiction clause shall apply:

**Law:** This policy shall be subject to the applicable state law for the insured location as identified in the Declarations page by its "Property Identification Number".

**Jurisdiction:** Jurisdiction over such dispute will with the state law for the insured location as identified in the Declarations page by its "Property Identification Number".

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Insurer hereon to pay any amount claimed to be due hereunder, the Insurer hereon, at the request of the specific Named Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States for the insured location as identified in the Declarations page by its "Property Identification Number".  Nothing in this Clause constitutes or should be understood to constitute a waiver of the Insurer's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

> Thomas M. Dawson
> Drinker Biddle & Reath LLP
> 1177 Avenue of the Americas, 41st Floor
> New York, NY 10036-2714
> UNITED STATES OF AMERICA

and that in any suit instituted against the insurer, the Insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Insurer  in any such suit and/or upon the request of the  specific Named Insured to give a written undertaking to the specific Named Insured that they will enter a general appearance upon the Insurer's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Insurer hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of a specific Named Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## PREMIUM PAYMENT CLAUSE

The Named Insured as set forth on the Declarations page of this policy  undertakes that premium will be paid in full to CIBA Insurance Services Inc. on behalf of the Insurer within 30 (thirty) days of inception of this policy (or, in respect of installment premiums, when due).

If the premium due under this policy has not been so paid to CIBA Insurance Services Inc. on behalf of the Insurer by the 30th (thirtieth) day from the inception of this policy (and, in respect of installment premiums, by the date they are due) the Insurer shall have the right to cancel this policy by notifying the specific Named Insured via CIBA Insurance Services, Inc. in writing.  In the event of cancellation, premium is due to the Insurer on a pro rata basis for the period that the Insurer is on risk but the full policy premium shall be payable to the Insurer in the event of a loss or "occurrence" prior to the date of termination which gives rise to a valid claim under this policy.

It is agreed that the Insurer shall give not less than 10 days prior notice of cancellation to the Named Insured via CIBA Insurance Services, Inc.  If premium due is paid in full to the Insurer before the notice period expires, notice of cancellation shall automatically be revoked.  If not, the policy shall automatically terminate at the end of the notice period.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

# ALL RISK PROPERTY COVERAGE FORM
## CIBA - 2017

Subject to the terms, conditions, limitations and exclusions hereinafter contained or added by endorsement(s), this Policy insures Real and Personal Property (including Improvements and Betterments) of the Named Insured, or property for which the Named Insured may be held legally liable, against ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE EXCLUDING "FLOOD" AND "EARTH MOVEMENT" occurring during the policy period.

The word "Underwriter(s)", Insurer(s)" or "Company" wherever it appears in this policy means the schedule of participating insurers referenced in (Appendix 1) attached to and forming part of this policy and subject to any notices contained herein.

Wherever '$' or USD appears herein these are deemed to read 'United States Dollars'

**Named Insured:**     Per the Declarations page of this policy

**Mailing Address:**     Per the Declarations page of this policy

## 1.     POLICY PERIOD

In consideration of premium paid, this policy attaches and covers for the period as set forth in the Declarations page beginning and ending at 12:01 A.M., Standard Time, at the location as set forth in the Declarations page.

## 2.     LIMITS OF LIABILITY

**a.**     The Company shall not be liable for more than the **limits set forth in the Declarations page** except for interests, or perils, which are sub-limited in clause 2.b. or further sub-limited by endorsement(s) to this Policy.

**b.**     **Sub-limits of Liability**

Inclusive within the limits of liability set forth in the Declarations page are the following sub-limits unless otherwise stated in the Declarations page or endorsed hereafter:

| | | | |
|---|---|---|---|
| **(1)** | Valuable Papers & Records | $ | 100,000 |
| **(2)** | Accounts Receivable | $ | 250,000 |
| **(3)** | Professional Fees | $ | 100,000 |
| **(4)** | Landscaping, Trees, Shrubs, Plants and Lawns further sub-limited maximum per item limit of: | $ | 250,000 |
| | Per Tree or Lawn | $ | 10,000 |
| | Per Shrub or Plant | $ | 500 |
| **(5)** | Emergency Vacating Expense | $ | 100,000 |
| **(6)** | Tenant Relocation Expense subject to a maximum payment per unit of | $ $ | 100,000 5,000 |
| **(7)** | Locks and Keys | $ | 25,000 |
| **(8)** | Pools, tennis courts, playgrounds, recreational equipment | $ | 500,000 |

| | | | |
|---|---|---|---|
| **(9)** | Pollution Cleanup and Removal  Costs | $ | 100,000 |
| | except for Asbestos Removal which is further limited to | $ | 25,000 |
| **(10)** | Debris Removal Costs And Expenses | | 25%  of adjusted loss amount not to exceed $5,000,000 |
| **(11)** | Building Ordinance, Demolition & Increased Cost Of Construction - The following sub-limits apply to Building Ordinance, Demolition & Increased Cost of Construction except as otherwise stated in the Declarations page or endorsed hereafter; | | |

| | | | |
|---|---|---|---|
| | Coverage A: | Undamaged Portion | $  Included |
| | Coverage B: | Demolition | $  100,000 |
| | Coverage C: | Increased Cost of Construction | $  100,000 |
| | Coverage D: | Loss of Income | $  50,000 |

| | | | |
|---|---|---|---|
| **(12)** | Additions under construction, alterations and repairs to Real Property, including materials, equipment and supplies, except as otherwise stated in the Declarations page or endorsed hereafter | $ | 25,000 |
| **(13)** | Business Personal Property including "Fine Arts", except as otherwise stated in the Declarations page or endorsed hereafter | $ | 100,000 |
| **(14)** | Mold, Fungi, Wet or Dry Rot and Bacteria | $ | 10,000 |
| **(15)** | Off-Premises Services Interruption | $ | 100,000 |
| **(16)** | Fire Fighting Materials or Expenses | $ | 100,000 |
| **(17)** | Increased Tax Liability for Rental Income | $ | 25,000 |
| **(18)** | Arson Reward | | 10% of Adjusted claim; not to exceed $25,000 |
| **(19)** | Back Up or Overflow of Sewers and Drains, except as otherwise stated in the Declarations page or endorsed hereafter | $ | 100,000 |
| **(20)** | Expediting Expense | $ | 25,000 |

**3.**    **DEDUCTIBLE**

**a.**    Each claim for loss, damage or expense arising out of any one "occurrence" at the insured location as identified by its "Property Identification Number" submitted shall be adjusted as one claim, and from the amount of such adjusted claim, there shall be deducted the applicable deductible amount specified in the Declarations page attached hereto or endorsed hereafter.

      **b.**      If two or more deductible amounts apply to a claim at a single location, the total to be deducted shall not exceed the largest deductible that applies, with such larger deductible being applied to the entire loss at the insured location.

**4.**      **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to the specific Named Insured, through **Claims Adjusting Group.** The Named Insured's receipt of loss payment shall constitute a release in full of all liability under this policy with respect to such loss.

**5.**      **TERRITORY**

This policy covers insured locations within the fifty states of the United States of America, and the District of Columbia.

**6.**      **COVERAGE**

Except as hereinafter excluded, this policy covers the following described property including the actual Loss of Income sustained by the Named Insured at location(s) described in the applicable Declarations page issued to the Named Insured

    **a.**      **(1)**      **Real Property**

The interest of the Named Insured in all real property, including improvements and betterments, foundations and supports, flues, wiring and plumbing, owned, used, or intended for use by the Named Insured, or hereafter constructed, erected, or installed.

If not covered by other insurance: (a) additions under construction, alterations and repairs to "buildings" or structures and (b) materials, equipment, supplies and temporary structures, on or within 100 feet of the location described in the Declarations page, used for making additions, alterations or repairs to the "buildings" or structures.

In the event of loss or damage, the Company agrees to accept and consider the Named Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or leases to the contrary.

The interest of the Named Insured in the Real Property of others in the Named Insured's care, custody, or control, and the Named Insured's liability imposed by law or assumed by written contract for such property.

Contractors' interest in real property is covered to the extent of the Named Insureds liability imposed by law or assumed by written contract.

Personal property owned by the Named Insured that is used to maintain or service the "buildings" or structures or the premises, including fire extinguishing equipment, outdoor furniture, floor coverings, and appliances used for refrigerating, ventilating, cooking, dishwashing or laundering.

      **(2)**      **Business Personal Property**

The interest of the Named Insured in all business personal property, including "Fine Arts" and "Electronic Data Processing Equipment" and "Electronic Data Processing Media", located in or on the "described premises" or within 1,000 feet of the "described premises", consisting of furniture and fixtures, machinery and equipment, computer hardware and media and "Fine Arts".

At the option of the Named Insured, personal property belonging or in use by the Named Insured's officials, employees and volunteers while at the "described premises".

The interest of the Named Insured in the personal property of others in the Named Insured's care, custody or control, and the Named Insured's liability imposed by law or assumed by written contract for such property.

**b.     Loss of Income**

(1)     This policy is extended to cover the actual Loss of Income sustained by the Named Insured resulting directly from the necessary untenantability caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of the policy to real or personal property as described in clause 6. a., but not exceeding the reduction in income less charges and expenses which do not necessarily continue during the period of untenantability, not to be limited by the expiration date of this policy.

For the purpose of this insurance "income" is defined as the sum of:

(a)     The gross rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss;

(b)     The fair rental value of any portion of the property occupied by the Named Insured; and,

(c)     Income from loss of monthly condominium fees, but only if stated in the Declarations page

Less non-continuing charges and expenses.

(2)     For purposes of determining the loss payable for Loss of Income, the period of indemnity is defined as:

(a)     The period from the time of direct physical damage insured by this policy to the time when, with due diligence and dispatch, physically damaged "buildings" could be:

(i)     repaired or replaced, and

(ii)     business operations could have commenced,

not limited by the expiration date of this policy.  In no event will the period of indemnity exceed twenty-four (24) months from the date of loss.

(3)     For purposes of determining the loss payable for alterations or additions to existing property and for property under the course of construction, the rental value will be determined from:

(a)     The period of time of direct physical damage not excluded by this policy, when the property would have been completed if the direct physical loss or damage had not occurred, to the time when, with due diligence and dispatch, physically damaged alterations, additions or "buildings" could be:

(i)     repaired or replaced, and

(ii)    business operations could have commenced

had no physical damage occurred to the covered property.

(4)    The period of interruption:

(a)    will include that period for which physically damaged or destroyed building materials and supplies are replaced, and

(b)    the additional time required for the demolition and removal of debris.

(5)    Expense to reduce loss:

This policy also covers such expenses as are necessarily incurred for the purpose of reducing any loss under this policy. Such coverage, however, shall not exceed the amount by which the loss under this policy is thereby reduced.

(6)    Experience of the business:

In determining the amount of income covered hereunder, due consideration shall be given to the rental experience before the date of damage or destruction and the probable experience thereafter had no loss occurred.

(7)    Extended Period of Indemnity

This policy covers the actual loss of income sustained during the period that begins on the date the property is actually repaired, rebuilt or replaced and ends on the earlier of:

(a)    The date the property could, with due diligence and dispatch, be re-occupied on the same or equivalent rental terms and conditions that existed prior to such loss or damage;

(b)    180 days after the date the property is actually repaired, rebuilt or replaced.

(8)    Special Exclusion

This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order nor for any increase of loss due to interference at the Named Insured's designated premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption of continuation of business, or with the re-occupancy of the premises.

**c.     Extra Expense**

Extra Expense means reasonable and necessary expenses incurred by the Named Insured during the period of interruption that the Named Insured would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a peril insured against. Extra Expense does not change, add, or otherwise alter the limits of liability as set forth in the Declarations page or in Clause 2.b. as set forth herein.

(1)    The Company will pay any Extra Expense to avoid or minimize the suspension of business and to continue operations:

(a)    At the "described premises"; or

     (b)     At replacement premises or at temporary locations, including:

         (i)     Relocation expenses; and,

         (ii)     Costs to equip and operate the replacement or temporary locations.

(2)     The Company will pay any Extra Expense to minimize the suspension of business if the Named Insured cannot continue operations;

(3)     The Company will pay any Extra Expense to repair or replace any property to the extent it reduces the amount of loss that otherwise would have been payable under this policy.

to the extent it reduces the amount of loss that otherwise would have been payable under this policy.

(4)     Tenant Relocation Expense

This policy is extended to cover relocation expenses incurred by the Named Insured to relocate residents, tenants or lawful occupants to other living quarters in the shortest possible time when rented space or living quarter(s) at a described location are made uninhabitable as a direct result of physical loss or damage from a peril insured by this policy.

     (a)     Coverage is limited to the reasonable and necessary expense of:

         (i)     Packing, sorting, and transportation cost for personal property;

         (ii)     Reestablishing new utility services, less refunds from discontinued services, at the damaged location;

         (iii)     Searching for new living quarters;

         (iv)     Disconnecting and reconnecting fixtures and equipment; and,

         (v)     Storage costs while awaiting possession of other living quarters or restoration of existing quarters.

     (b)     No coverage is provided for:

         (i)     Loss caused by the termination of a lease or other agreement;

         (ii)     Security deposits or other payments made to the landlord or lessors of the new living quarters;

         (iii)     Down payments, legal fees and closing costs for the purchase of new living quarters; or;

         (iv)     Loss resulting from Off Premises Services Interruption, Interruption by Civil or Military Authority, or Ingress/Egress except as otherwise provided in Clause 6 d. (1), (2), and (3).

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

d.    **Provisions Applicable To Loss of Income and Extra Expense**

    (1)    <u>Off-Premises Services Interruption</u>

    This policy is extended to cover the actual loss sustained and necessary Extra Expense incurred during the period of time when, as a direct result of physical damage within five (5) miles of the premises by a peril insured against, electrical, steam, gas, water or telephone services to the "described premises" are interrupted.

    (2)    <u>Interruption by Civil or Military Authority</u>

    This policy is extended to cover the actual loss sustained and necessary Extra Expense incurred during the period of time when, as a direct result of physical damage within five (5) miles of the premises by a peril insured against, access to the "described premises" is prohibited by order of civil or military authority. The maximum period of indemnity in respect of this extension shall not exceed 30 consecutive days from the date of that order.

    (3)    <u>Ingress/Egress</u>

    This policy is extended to cover the actual loss sustained and necessary Extra Expense during the period of time when, as a direct result of physical damage within five (5) miles of the premises by a peril insured against, ingress to or egress from the "described premises" is thereby prevented. The maximum period of indemnity in respect of this extension shall not exceed 30 consecutive days.

e.    **Accounts Receivable**

Accounts receivable are defined as:

    (1)    All sums due to the Named Insured from customers, provided the Named Insured is unable to effect collection thereof as the direct result of loss or damage to records of accounts receivable;

    (2)    Collection expense in excess of normal collection cost and made necessary because of such loss or damage; and,

    (3)    Other expenses, when reasonably incurred by the Named Insured in re-establishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Named Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred, but the Named Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

    (a)    The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim;

    (b)    The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Named Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Named Insured.

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

**f.** **"Electronic Data Processing Equipment" and "Electronic Data Processing Media"**

The following terms and conditions shall apply to electronic data processing coverage in addition to those terms and conditions elsewhere in this policy form.  In the event any of the following is in conflict with terms and conditions elsewhere in this policy form, the following terms will supersede any other:

(1)     The following is covered as part of Business Personal Property: "Electronic Data Processing Equipment" and Electronic Data Processing Media" including the information recorded therein for direct loss or damage and for any resultant Extra Expense.

(2)     The following exclusions are added to  this policy form.

This policy does not insure:

(a)     Loss or damage caused by error in machine programming;

(b)     Loss or damage caused by or arising out of infidelity by an employee of the Named Insured.  A willful act of malicious intent or damage caused by unauthorized entry shall be deemed not to be an act of infidelity and shall be covered under this policy;

(3)   How loss is settled:

(a)     "Electronic Data Processing Equipment" and "Electronic Data Processing Media" and information therein;

The measure of recovery shall be the cost of replacement or reproduction with other of like kind and quality; if not replaced or reproduced the Company will pay the blank value of the media.

(b)     Extra Expense

The necessary extra expense incurred by the Named Insured in order to continue as nearly as practical the normal conduct of the Named Insured's Data Processing operation following loss or damage to property covered under this section of the policy by a peril not otherwise excluded, whether or not such Extra Expense reduces the amount of loss that would have otherwise been payable under the business interruption section of this policy.  However, no payment shall be made under this section if the same is otherwise collectible under the business interruption section.

**g.** **"Fine Arts"**

Coverage is hereby provided as part of Business Personal Property for "Fine Arts" which are either the "Fine Arts" of the Named Insured or the "Fine Arts" of others in custody of the Named Insured while at the locations designated elsewhere in this policy (if any) or anywhere else within the territorial definition of this policy temporarily, and while on exhibition.

In the event of the total loss of any article or articles which are a part of a set, the Company agrees to pay the Named Insured the full amount of the value of such set, as specified in the Declarations page, and the Named Insured agrees to surrender the remaining parts of the set to the Company.

The limit of liability for "Fine Arts" will not exceed $100,000 or the Business Personal Property Limit, whichever is the lesser amount.

**h.** **Valuable Papers and Records**

This policy covers Valuable Papers. The following terms and conditions shall apply, as well as those terms and conditions elsewhere in this policy form: "Valuable Papers and Records" are defined as written, printed, or otherwise inscribed documents and records, including, but not limited to, books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts and media but not including money and/or securities. This extension does not apply to valuable papers and records which exist as "electronic data processing media."

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

**i.** **Emergency Vacating Expense**

This policy is extended to cover the reasonable expenses incurred by the Named Insured when an authorized governmental agency or other similar authority orders the emergency evacuation of residents, tenants or lawful occupants from an insured "building" as a result of an immediately impending insured peril that threatens imminent physical danger or loss of life to such occupants, but not to exceed the applicable limit of insurance shown in the policy.

No coverage is provided if the vacating results from a planned evacuation drill, evacuation of any resident because of a medical condition(s), or a false alarm.

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

**j.** **Locks and Keys**

This policy is extended to cover the reasonable and necessary expense incurred by the Named Insured for replacing locks and keys resulting from insured physical loss or damage. Coverage includes the actual cost to:

(1) Replace;
(2) Adjust,
(3) Reprogram

Locks to accept new keys or entry codes.

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

**k.** **Increased Tax Liability for Rental Income**

This policy is extended to cover increased tax liability incurred by the Named Insured as a direct result of direct physical loss or damage insured by this policy to property not excluded by this policy on the covered loss of rental income portion of a loss recovery, if the tax liability is greater than the amount that would have been incurred had no loss occurred. This policy will cover only the increased tax liability for the profit portion of the rental income loss.

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

**l.     Arson Reward**

This policy is extended to cover payment of any reward offered on the Named Insured behalf for information that leads to conviction of the perpetuator(s) of arson (fire) and vandalism to insured property that sustains physical loss or damage insured by this policy.  The Company's total liability for any one "occurrence" will not exceed the amount set forth in Clause 2.b.

Regardless of the number of informants providing information that leads to a conviction, the Company's payment of this reward will not exceed the amount set forth in Clause 2.b.

**m.     Back Up or Overflow of Sewer or Drains**

Coverage is extended for loss or damage that results from back up or overflow of sewers or sump pump wells or similar devices designed to prevent overflow seepage or leakage of subsurface water that occurs during the policy period.  However, no coverage is extended for loss or damage that results from sewer or sump overflow resulting from "Flood". The Company will not pay more under this extension than the applicable sublimit stated in this policy as set forth in Clause 2.b.

**n.     Business Personal Property While Off Premises or In Transit**

The policy is extended to cover Business Personal Property while it is in the course of transit within the Policy Territory or at premises that are not described in the Declarations page. The limit of liability for Business Personal Property While Off- Premises or In Transit will not exceed $100,000 or the Business Personal Property Limit, whichever is the lesser amount.

**7.     PERILS EXCLUDED**

a.     This policy does not insure against loss or damage caused directly or indirectly by, to, or resulting from any of the following.  Loss or damage is excluded regardless of any cause or event whether or not insured under this policy that contributes concurrently or in any sequence to the loss or damage.

(1)     Any fraudulent or dishonest act or acts committed by the Named Insured or any of the Named Insured's employees meaning only dishonest or fraudulent acts committed by the Named Insured or the Named Insured's employees with the manifest intent to:

(a)     cause the Named Insured to sustain such loss; and

(b)     obtain financial benefit for the Named Insured, Named Insured's employee, or for any other person or organization intended by the Named Insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing pensions, or other employee benefits earned in the normal course of employment;

(2)     Nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled and whether such loss be direct or indirect, proximate, or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy except:

(a)     If fire ensues, liability is specifically assumed for direct loss by such ensuing fire but does not include any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

(b)    The Company shall be liable for loss or damage caused by sudden and accidental Radioactive Contamination including resultant radiation damage for each "occurrence" from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

(3)    (a)    Any hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending or expected attack:

(i)    by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

(ii)    or by military, naval or air forces;

(iii)    or by an agent of any such government, power, authority or forces;

(b)    Any weapon employing atomic fission or fusion;

(c)    Any rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such "occurrence";

(d)    Any seizure or destruction by order of public authority, except destruction by order of public authority, to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction which occurs due to a peril insured against under this policy;

(e)    Any risks of contraband or illegal trade.

(4)    Named Windstorm, as designated by the National Weather Service, including Hurricane and/or Tropical Storm, in "Tier 1 and 2 counties", as further defined in this policy. This Named Windstorm exclusion in "Tier 1 and 2 counties" also excludes loss or damage caused by water in any state, or rain, or sleet, or snow, or hail, or sand, dust or any other substance, material or object that is carried, blown, driven or otherwise transported by onto or into the property insured in "Tier 1 and 2 counties" as a result of the Named Windstorm.

(5)    "Flood", as defined herein or spray resulting from "Flood", whether driven by wind or not, mudslide or mud-flow; water on or below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basements or other floors, or through doors, windows or other openings in such sidewalks, driveways, foundations, walls or floors. However, this exclusion shall not apply to loss or damage caused by ensuing fire, theft or explosion not otherwise excluded by the policy.

(6)    "Earth Movement" including loss or damage caused by, resulting from, contributed to, or aggravated by any natural or manmade "earth movement", including but not limited to earthquake, landslide, mud flow, volcanic eruption, earth sinking, subsidence, earth rising, or earth shifting; However this exclusion shall not apply to loss or damage caused by ensuing fire, theft, sprinkler leakage or explosion not otherwise excluded by the policy.

b. This policy does not insure against loss or damage caused by the following:

(1) Faulty, inadequate or defective design, planning, development, surveying, siting, specifications; faulty materials, faulty workmanship or maintenance; unless an insured loss ensues during the policy period as set forth in the Declarations page and then this policy shall cover for such ensuing loss or damage;

(2) Electrical injury or disturbance to electrical appliances, devices, or wiring caused by electrical currents artificially generated; unless fire or explosion ensues and then this policy shall only cover for such ensuing loss or damage occurring during the policy period as set forth in the Declarations page;

(3) Mechanical breakdown occurring during the policy period as set forth in the Declarations page;

(4) Explosion, rupture, or bursting of steam boilers, steam pipes, steam turbines, or steam engines owned or operated by the Named Insured; unless an insured loss ensues during the policy period as set forth in the Declarations page and then this policy shall only cover for such ensuing loss of damage. The Company will also pay for loss or damage during the policy period as set forth in the Declarations page caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass;

(5) Loss or damage caused by or resulting from vermin, bats, insects (including but not limited to termites and bed bugs), inherent vice, latent defect, contamination, rust, dampness or dryness of the atmosphere, smog, extremes of temperature, wear and tear, cumulative effects of smoke, vapor, liquid, dust or gradual deterioration; unless an insured loss ensues during the policy period as set forth in the Declarations page and then this policy shall only cover for such ensuing loss or damage;

(6) Settling or shrinkage of walls, floors or ceilings; unless an insured loss ensues during the policy period as set forth in the Declarations page and then this policy shall only cover for such ensuing loss or damage;

(7) Loss of market; damage or deterioration occurring during the policy period as set forth in the Declarations page arising from any delay;

(8) Unexplained loss, mysterious disappearance, or loss or shortage disclosed on taking inventory, voluntary parting with title or possession of property; misappropriation; conversion occurring during the policy period as set forth in the Declarations page;

(9) Rain, snow, ice or sleet occurring during the policy period as set forth in the Declarations page to personal property in the open;

(10) Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more;

(11) Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(a) A diligent effort is made to regularly maintain heat in the "building" or structure; or,

(b) The equipment is drained and the supply shut off;

(12)    Terrorism, including action taken to prevent, defend against, respond to or retaliate against terrorism or suspected terrorism. Terrorism is defined as any act, involving the use or threat of force, violence, dangerous conduct, interference with the operations of any business, government or other institution, or any similar act, when the effect or apparent purpose is: to influence or instill fear in any government (de jure or de facto) or the public, or any segment of either; or to further or to express support for, or opposition to, any political, religious, social, ideological or similar type of objective or position;.

(13)    Loss or damage caused by or resulting from human and/or animal remains at, in or surrounding the insured location as identified in the Declarations Page by its "Property Identification Number". Any such loss or damage resulting from human and/or animal remains are specifically excluded from any Pollution Cleanup or Debris Removal limits. Such loss or damage is wholly excluded even if the human and/or animal remains are the result of a covered loss.

Nevertheless, if fire is not excluded by this policy and a fire arises directly or indirectly from human or animal remains, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy.

c.    This policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal, seepage or migration of "contaminants or pollutants" all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy.

Nevertheless, if fire is not excluded by this policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy.

This exclusion will not apply when loss or damage is caused directly by the following specified causes of loss: fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism or malicious mischief. This exclusion shall also not apply when loss or damage is caused directly by leakage or accidental discharge from automatic fire protective systems.

d.    This policy does not cover:

(1)    Asbestos, dioxin or polychlorinated biphenyl (hereinafter referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems;

(2)    Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

(3)    Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the Named Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The exception to exclusion 7 d. (1) above does not apply to payment for the investigation or defense of any loss, damage or any undamaged portion of the Named Insured's property that can no longer be used for the purpose for which it was intended.

e.    The Company will not pay the expense to:

(1)    Extract "contaminants or pollutants" from debris; or

(2)    Extract "contaminants or pollutants" from land or water; or

(3)     Remove, restore or replace contaminated or polluted land or water; or

(4)     Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Named Insured shall give written notice to the Company of its intent to claim for the cost of removal of debris or cost of clean-up not later than twelve months after the date of such loss or damage.

f.      Notwithstanding any of the provisions of this policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Named Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

g.      This policy does not cover unless otherwise provided in Clause 12:

(1)     Loss or damage caused directly or indirectly by mold or other fungi, wet or dry rot, or bacteria;

(2)     The costs associated with the enforcement of any ordinance or law which requires the Named Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of mold or other fungi, wet or dry rot, or bacteria;

(3)     Any costs, expenses, fines or penalties incurred or sustained by or imposed on the Named Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

This mold or other fungi, wet or dry rot, or bacteria exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

h.      Limitations

This policy does not insure loss or damage to:

(1)     The interior of any "building" or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a)     The "building" or structure first sustains damage by a peril insured against to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(b)     The loss or damage is caused by or results from thawing of snow, sleet or ice on the "building" or structure.

## 8.     PROPERTY EXCLUDED

This policy does not cover loss or damage to:

a.      Money and securities.

The term "securities" shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens, and tickets but does not include money;

b.    Land, land values or water;

However, this exclusion shall not apply to the cost of restoring or repairing landscaping as provided under the applicable sublimit in clause 2. b. of this policy;

c.    Growing crops, standing timber, and animals, birds or fish;furs, jewelry, or precious stones or metals;

This exclusion does not apply to ornamental trees and shrubs, located on the Named Insured's premises subject to applicable sublimit in clause 2.b. of this policy;

d.    Watercraft, aircraft, railroad rolling stock, spacecraft or motor vehicles licensed for highway use;

e.    Underground mines and mining property located below the surface of the ground;

f.    Real or Personal Property owned by others unless in the care, custody, or control of the Named Insured.

g.    Bridges or tunnels used for vehicular traffic, reservoirs, dikes, canals and dams;h.   Docks, piers and wharves which are not a structural part of a "building";

i.    Oil or gas wells, platforms, rigs, or structures;

j.    Intangible property, including without limitation, goodwill and intellectual property of any kind;

k.    (1)    Fixtures, appliances, cabinets, countertops, floor coverings, ceiling coverings, wall coverings, installations, alterations and additions that comprise part of a "building", when situated within portions of the premises used exclusively by individual condominium unit owners. However, if the insured condominium association's Conditions, Covenants and Restrictions require that the insured condominium association insure said property, then said property will be insured under this policy for the interest of the Named Insured condominium association, but only for the original value and quality that existed at the formation of the condominium association except as otherwise stated in the Declarations Page; and

(2)    Personal property owned by individual condominium unit owners.

## 9.   VALUATION

At the time of loss, the basis of adjustment unless otherwise endorsed herein shall be as follows:

a.    Real and personal property not otherwise valued below, shall be valued at the cost of repairing or replacing (whichever is the lesser amount), at the time of loss without deduction for depreciation, with another building or personal property of comparable material and quality for the same use or occupancy.

b.    The following property, unless otherwise endorsed herein shall be valued at the time of loss as follows:

(1)    Property of others – the amount for which the Insured is legally liable, but not exceeding replacement cost;

(2)    Unrepairable electrical and mechanical equipment, including "electronic data processing equipment", the cost to replace with equipment that is functionally equivalent to that damaged;

(3)    Trees, shrubs, plants and lawns will be limited to standard local nursery stock;

(4)     "Fine Arts" shall be valued at the lesser of:

    (a)     The cost to repair or restore the article to the condition that existed immediately prior to the loss;

    (b)     The cost to replace the article; or,

    (c)     The value designated for the article on the schedule of "Fine Arts" on file with the Company;

(5)     Valuable Papers and Records will be valued at the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. The Company will also pay for the cost of blank material for reproducing records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records.

(6)     With respect to "buildings" which are declared by a local state or federal authority to be of historical significance or of historical value, such rebuilding, repairing or replacement shall be with material, workmanship, processes, technologies and designs publicly available within the current marketplace and shall not include the cost of creating outdated, archaic or antiquated materials, workmanship, processes, technologies or designs;

(7)     Tenant's Improvements and Betterments:

    (a)     If repaired or replaced at the expense of the Named Insured within a reasonable time after loss, the replacement cost of the damaged or destroyed improvements and betterments;

    (b)     If not repaired or replaced at the expense of the Named Insured within a reasonable time after loss, the proportion of the original cost at the time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agreement in effect at the time of loss bears to the period from the dates such improvements or betterments were made to the expiration date of the lease; or,

    (c)     If repaired or replaced or to be repaired or replaced at the expense of others for the use of the Named Insured, there shall be no liability hereunder.

c.     The Named Insured may:

(1)     Voluntarily elect to rebuild at another site provided that such rebuilding does not increase the amount of loss or damage which would otherwise be payable to rebuild at the present site;

(2)     Submit a claim based on the "Actual Cash Value" of the property lost or damaged until the actual repair, purchase or replacement has been completed.  The Named Insured may still claim the additional coverage which replacement cost provides if notification of intention to do so is received by the Company within 180 days after the loss or damage.

d.     Replacement cost is subject to all the terms, conditions and limitations of the policy (including any endorsements) and the following additional provisions:

(1)     The Named Insured must execute repairs or replacement with due diligence and dispatch;

(2)    The Company will not pay on a replacement cost basis until the lost or damaged property is actually repaired or replaced.

(3)    The Company will not pay more on a replacement cost basis than the least of

    (a)    The cost to replace, on the same site, the loss to damaged property with other property of comparable material and quality which is used for the same purpose; or

    (b)    The Amount actually spent by the Named Insured that is necessary to repair or replace the lost or damaged property.

e.    The Company will only pay the Named Insured based on a "financial interest" or contractual liability in the insured property at the time of loss.

f.    If the Named Insured-fails to comply with any of the valuation provisions or does not repair or replace the property within two (2) years from the date of loss, the basis of the valuation will revert to the "Actual Cash Value".  "Actual Cash Value" is defined as the replacement cost of the property at the time and place of the loss or damage with proper deduction for depreciation.

## 10.    FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES

This policy is extended to cover expenses incurred by the Named Insured to replace fire extinguishing materials that are lost, expended or destroyed to the extent of the value of such fire extinguishing materials; and for firefighting expenses incurred by or imposed on the Named Insured in connection with covered loss or damage to covered property.  However, there will be no coverage for charges incurred for false alarm.

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

## 11.    POLLUTION CLEANUP AND REMOVAL COSTS

Notwithstanding the provisions of Clause 7.c. or any provision respecting seepage and/or pollution and/or contamination, and/or debris removal and/or cost of cleanup, in the event of direct physical loss or damage to the property insured hereunder that is directly caused by or results from one or more of the following causes that occurs during the policy period as set forth in the Declarations page:

- Fire;
- Lightning;
- Explosion;
- Windstorm;
- Hail;
- Smoke;
- Vehicles;
- Aircraft;
- Civil disturbance;
- Riot;
- Sprinkler Leakage;
- Leakage from fire extinguishing equipment;
- Weight of snow, ice or sleet;
- "Water Damage" except as otherwise excluded in this Policy.

This policy (subject otherwise to its terms, conditions and limitations, including but not limited to any applicable deductible) also insures:

    a.   expenses reasonably incurred in removal of debris of the property insured hereunder destroyed or damaged from the location of the loss; and/or,

    b.   cost of cleanup, at the location of the loss, made necessary as a result of such direct physical loss or damage; and/or,

    c.   cost of pollution cleanup;

not to exceed the policy sub-limit specified in Clause 2.b.

It is a condition precedent to recovery that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder unless such payment is precluded solely by the operation of any deductible and that the Named Insured shall give notice to the Company of intent to claim for cost of removal of debris or cost of cleanup **NO LATER THAN 12 MONTHS AFTER THE DATE OF SUCH PHYSICAL LOSS OR DAMAGE**.

**12.**    **LIMITED COVERAGE FOR "MOLD", "FUNGI", WET OR DRY ROT OR "BACTERIA"**

This policy is extended to cover, subject to a maximum limit of $10,000 per "occurrence" per insured location, "loss or damage" directly caused by or resulting from "mold" or "fungi", wet or dry rot, or "bacteria" if such "mold" or "fungi", wet or dry rot, or "bacteria" is directly caused by or results from one or more of the following causes that occurs during the policy period:

- Fire;
- Lightning;
- Explosion;
- Windstorm;
- Hail;
- Smoke;
- Vehicles;
- Aircraft;
- Civil disturbance;
- Riot;
- Sprinkler Leakage;
- Leakage from fire extinguishing equipment;
- Weight of snow, ice or sleet;
- "Water Damage" except as otherwise excluded in this Policy.

The maximum total limit provided by this coverage extension is $10,000 per "occurrence" per location regardless of the number or type of coverages that may apply, the number of locations to which this coverage extension applies, or regardless of the number or type of mold or other fungi, wet or dry rot, or bacteria that caused the loss or damage.  When this agreement and any other insuring agreement or endorsement written by the Company applies to the same mold or other fungi, wet or dry rot, or bacteria loss, $10,000 per "occurrence" per location is the most the Company will ever pay on a combined total basis for all such loss, irrespective of any limit that might apply to the underlying cause of the mold or other fungi, wet or dry rot or bacteria loss, if any.  This amount is not in addition to the limits of coverage for real or personal property or time element coverage as specified elsewhere in this policy and is inclusive of all testing, analysis, remediation and reconstruction.

**Definitions applicable to this section**

"Mold" or "fungi" means:
any type or form of mold or mildew; any other type or form of fungus; or any mycotoxin, spore, scent or byproduct that is produced or released by such mold, mildew, or other fungus.

"Bacteria" means:
any type or form of bacterium; or any by-product that is produced or released by such bacterium.

"Loss or damage" means:

Direct physical loss or damages to covered property by "mold", "fungus", wet or dry rot or "bacteria", including the cost of removal of the "mold", "fungus", wet or dry rot or "bacteria";

The cost to tear out and replace any part of the "building" or other property as needed to gain access to the "mold", "fungus", wet or dry rot or "bacteria"; and

The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is reason to believe that "mold", "fungus", wet or dry rot or "bacteria" are present.

## 13.    DEBRIS REMOVAL COSTS

a.      The Company will pay the reasonable and necessary expense incurred by the Named Insured to remove debris of insured property from a location remaining as the direct result of loss or damage insured by this policy during the policy period.  Such expenses will be paid only if reported to the Company in writing within 180 days of the date of direct physical loss or damage.

b.      For this Debris Removal coverage, the Company will pay 25% of:

   (1)      The amount the Company pays for the direct physical loss or damage to the insured property; plus

   (2)      The deductible in this policy applicable to that direct physical loss or damage.

c.      In no event will this Debris Removal Coverage apply to:

   (1)      Costs to extract "contaminants or pollutants" from land or water; or

   (2)      Costs to remove, restore or replace polluted land or water.

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

## 14.    BUILDING ORDINANCE, DEMOLITION AND INCREASED COST OF CONSTRUCTION

a.      In the event of loss or damage under this policy that causes the enforcement of any law or ordinance regulating the construction, repair, or use of property the Company shall be liable for:

| | |
|---|---|
| Coverage A. | The proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss; |
| Coverage B. | The cost of demolishing the undamaged property; |
| Coverage C. | The increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site and limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  However, the Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced; if the property is repaired or rebuilt it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance of law; |

      Coverage D.      Any increase in the business interruption, Extra Expense, rental value and royalties loss arising out of the additional time required to comply with said law or ordinance.

b.      Additional Conditions which apply to this extension:

If the property is repaired or replaced, on the same or another premises, this policy will not pay more for loss or damage, including loss caused by enforcement of any law or ordinance, than the least of the following amounts:

(1)      The amount actually spent to repair, rebuild, or reconstruct the "building", but not for more than the amount it would cost to restore the "building" on the same premises and to the same height, floor area, style and comparable quality of the original property insured, assuming that such repairing, rebuilding or reconstructing is then permitted; or

(2)      The Limit of Liability contained within this policy; or

(3)      If a portion of the property is not repaired or replaced, due to ordinance or law restricting or prohibiting repair or replacement of the "building" to the same height, floor area of the original property insured, the amount actually spent to repair, rebuild, or reconstruct the "building" and the "Actual Cash Value", of the portion of the property that is not repaired or replaced.

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

## 15. EXPEDITING EXPENSE

This policy covers the reasonable extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

## 16. CONTRIBUTING INSURANCE

This insurance shall be excess of any other contributing insurance.

## 17. EXCESS INSURANCE

Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

## 18. UNDERLYING INSURANCE

Underlying insurance is insurance excess of all, or any part of, the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered "other insurance."

19. **OTHER INSURANCE**

Except for insurance described by the excess insurance clause, by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether prior or subsequent hereto in date, and whether directly or indirectly covering the same property against the same perils. The Company shall be liable for loss or damage only to extent of that amount in excess of the amount recoverable from such other insurance.

20. **SUBROGATION**

Any release from liability entered into by the Named Insured prior to loss hereunder shall not affect this policy nor the right of the Named Insured to recover hereunder. The right of subrogation against the Named Insured, and/or its affiliated, subsidiary, and associated companies or corporations, or any other corporation or companies associated with the Named Insured through ownership or management, is waived.

In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the Named Insured's rights of recovery therefor. The Named Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Named Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned as if the amount of recovery has been known prior to the loss. If there should not be recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

21. **SALVAGE AND RECOVERIES**

When, in connection with any loss hereunder, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be figured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

The expense of all proceedings necessary to such recoveries shall be apportioned between the interests concerned in the ratio of their respective recoveries as finally settled. If there should be no recovery and proceedings are conducted solely by the Company, the expense thereof shall be borne by the Company.

22. **BRAND OR TRADEMARK**

In case of damage by a peril insured against to covered property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Named Insured, the salvage value of such damaged property shall be determined after removal at the Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

The Named Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods. The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Named Insured or with the Named Insured 's consent, but the Named Insured shall allow the Company any salvage obtained by the Named Insured on any sale or other disposition of such goods.

23. **MACHINERY**

In case of loss or damage by a peril insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company shall be limited to the value of the part or parts lost or damaged, or at the Insured's option to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

24.     **PARTIAL PAYMENT OF LOSS**

In the event of a loss covered by this policy, it is understood and agreed that the Company may allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

25.     **PROFESSIONAL FEES**

a.      This policy is extended to cover reasonable claims administration and loss data preparation fees and expenses to:

Auditors,
Accountants,
Architects,
Engineers,
Construction consultants,

for producing and certifying particulars or details of the Named Insured's business in order to determine the amount of loss. Expenses must be incurred by the Named Insured in order to establish the amount of the loss.

b.      The Company will not be liable for fees or expenses to: attorneys; public adjusters; appraisers or the Named Insured's own employees or agents.

c.      The limit of liability will not exceed the applicable limit of insurance shown in the sublimits of Clause 2.b.

26.     **APPRAISAL**

If the Named Insured and the Company fail to agree on the amount of loss, each, upon the written demand either of the Named Insured or of the Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Named Insured or of the Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The Named Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

If there is an appraisal, the Company will still retain its right to deny the claim.

27.     **PAIR AND SET**

Except as provided under Clause 23, in the event of loss or damage by a peril insured against to any article or articles which are part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

a.      The reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

b.      The full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

28.    **ASSISTANCE AND COOPERATION OF THE NAMED INSURED**

The Named Insured shall cooperate with the Company and, upon the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlement, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

29.    **PRESERVATION OF PROPERTY**

In case of actual or imminent physical loss or damage of the type insured against by this Policy, the expenses incurred by the Named Insured in taking reasonable and necessary actions for the temporary protection and preservation of property insured hereunder shall be added to the total physical loss or damage otherwise recoverable under this Policy and be subject to the applicable deductible and without increase in the limits of liability contained in this Policy.

30.    **MORTGAGE CLAUSE**

Loss, if any, under this policy, shall be payable to the mortgagee(s) (or Trustee) of a Named Insured as may be named in the Declarations Page as issued to a Named Insured as interest may appear under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property not by any change in the title or ownership of the property, not by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided, also, that the mortgagee (or trustee) shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge or said mortgage (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

The Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for –thirty days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and the Company shall have the right, on like notice, to cancel this agreement.

Whenever the Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefore existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payments shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

31.    **PAYMENT OF LOSS**

All adjusted claims shall be due and payable not later than 30 days after presentation and acceptance of proofs of loss by the Company or its appointed representative.

32.    **EVIDENCES OR CERTIFICATES OF INSURANCE**

Any Evidence of Commercial Property Insurance issued by CIBA Insurance Services on behalf of the Company in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said Evidence of Commercial Property Insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said Evidence

of Commercial Property Insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein.

**33.    CANCELLATION**

a.      Individual Named Insured locations covered under this policy may be cancelled at any time at the request of CIBA Insurance Services by mailing to the Named Insured at the address shown in the Declarations page issued for the Named Insured location as identified by its "Property Identification Number" written notice stating not less than thirty (30) days thereafter such cancellation shall be effective.  In the event of non-payment of premium, the number of days is amended to read ten (10) days.

b.      The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period.  Delivery of such written notice either by CIBA Insurance Services or by the Company shall be equivalent to mailing.

c.      If the cancellation is requested by CIBA Insurance Services, or if the insured property is sold by the Named Insured, the return premium will be calculated pro rata meaning the unearned premium will be returned.

d.      If the cancellation is requested by the Named Insured for any other reason than the insured property being sold, then the premium will be calculated short rate, meaning that 90% of the unearned premium will be returned.

**34.    JOINT LOSS AGREEMENT**

It is agreed that in the event the Named Insured suffers a loss at a location designated in both a Boiler and Machinery policy and this Policy, and there is disagreement between the Boiler and Machinery Insurer and the Company hereunder with respect to:

a.      Whether the loss was caused by an accident insured against by the Boiler and Machinery policy or by a peril insured against by this Policy,

        or

b.      The extent of participation of the Boiler and Machinery policy and this Policy in a loss which may be insured against, partially or wholly, by either or both of said policies, then after agreement between the Named Insured , the Boiler Insurer, and the Company hereunder as to the total amount of the loss recoverable under the policies, each insurer will, upon written request of the Named Insured pay to the Named Insured one-half (1/2) of the amount of loss which is in disagreement but no more than the Company would have paid had there been no Boiler and Machinery policy in effect at the time of the "occurrence".

The payment by the Company hereunder and acceptance of the same by the Named Insured signify the agreement of the Company to submit to and proceed with arbitration within ninety (90) days of such payments.  The Arbitrators will be three in number, one of whom shall be appointed by the Company hereunder, and the third appointed by consent of the other two.  The decision by the arbitrators shall be binding on the insurer.

The Named Insured agrees to cooperate in furnishing information and technical data as may be required by the Company in connection with such arbitration or any other method of apportionment upon which they may decide, but not to intervene Neither this agreement nor the payment or acceptance of any amounts hereunder shall operate to modify or waive the terms and conditions of the Boiler and Machinery policy or this Policy, or affect in any way the rights of the parties there under.

This agreement shall become effective at Inception and shall continue in force until canceled by either insurer on 90 days written notice to the Insured or until the termination of one or all of the policies specified herein, whichever occurs first

The provisions of this Agreement shall not apply unless such other policy issued by the Boiler and Machinery Insurers is similarly endorsed.

## 35.    PRIORITY OF PAYMENTS CLAUSE

In the event of a claim under this policy, and any underlying policy(ies), which involves more than one interest and/or coverage and/or peril, it shall be at the sole option of the Named Insured to apportion recovery under this policy when submitting final proof of loss. Subject to the overall amount of claims not exceeding the overall limit of liability contained herein for any one loss.

## 36.    ASSIGNMENT

Assignment or transfer of this policy shall not be valid except with the written consent of the Company.

## 37.    SUIT AGAINST COMPANY

No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the Named Insured shall have fully complied with all the requirements of this policy, nor unless the same be commenced within twelve (12) months next after inception of the loss provided, however, that if under the laws of the jurisdiction in which the property is located such limitation is invalid, then any such claims shall be void unless such action, suit or proceedings be commenced within the shortest limit of time permitted by the laws of such jurisdiction.

## 38.    "VACANT" AND UNOCCUPIED "BUILDINGS"

If the "building" where the loss occurs has been "vacant" for more than 90 consecutive days before the loss or damage occurs, the Company will not pay for loss or damage caused by any of the following:

a.   Water damage from any cause;
b.   Vandalism;
c.   "Building" Glass Breakage;
d.   Theft; or
e.   Attempted Theft.

## 39.    CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void in any case of fraud by the Named Insured as it related to this policy at any time.  It is also void if the Named Insured or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

a.   This policy;
b.   Property insured under this policy;
c.   The Named Insured or any other insured's interest in the property insured under this policy; or
d.   A claim made under this policy.

## 40.    DUTIES OF THE NAMED INSURED IN THE EVENT OF LOSS OR DAMAGE

It is a condition precedent to any payment of loss that the Named Insured must see that the following are done in the event of loss or damage to insured property as soon as possible:

a.        Notify the police if a law may have been broken.

b.        Give the Company immediate notice of loss or damage including a description of the property involved.

c.        Give the Company a description of how, when and where the loss or damage occurred.

d.    Take all reasonable steps to protect insured property from further damage by a peril insured against. If feasible, set the damaged property aside and in the best possible order for examination. Also, the Named Insured shall keep a record of expenses for emergency and temporary repair, for consideration in the settlement of the claim. Any record of expenses will not increase the applicable limit of insurance.

e.    At the Company's request, give the Company complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

f.    Permit the Company to inspect the property and records proving the loss or damage. Also permit the Company to take samples of damaged property for inspection, testing and analysis.

g.    Cooperate with the Company and its retained adjustors and experts in the investigation of the claim by providing requested documents and information as soon as possible.

h.    If requested, both the Named Insured and any of its employees submit under oath, to questioning, at such times as may be reasonably required about any matter relating to this insurance or the Named Insured's claim, including the Named Insured's books and records. In such event, the Named Insured's and employees' answers must be signed.

i.    Send the Company a signed, sworn statement of loss containing the information requested by the Company to investigate the claim. The Named Insured must do this within 60 days of the Company's request. The Company will supply the Named Insured with the necessary forms.

## 41.    CONFORMITY TO STATUTE

Terms of this policy in conflict with the written laws of the state in which the policy is issued are changed to conform to such laws.

## 42.    TITLES OF PARAGRAPHS

The titles of the paragraphs of this form and of endorsements, if any, now or hereafter attached hereto are inserted solely for the convenience of reference and shall not be deemed in any way to limit or affect provisions to which they are related.

## 43.    DEFINITIONS

The following terms, whenever used in this policy, are defined as follows:

a.    "Account Identification Number" (AIN)

The contract number assigned to an individual Insured Member covering their schedule of locations insured hereunder. The AIN is issued by CIBA under the authority of the various Insurers, as listed in Appendix BP, and is subject to all terms and conditions of such Insurers' policies, to the extent specifically stated for the individual contract number issued to the Insured Member.

b.    "Actual Cash Value"

The cost to repair or replace the damaged property, minus depreciation of materials and applicable labor.

c.    "Building"or "Buildings"

Any building at the "described premises".

d.    "Contaminants or Pollutants"

Any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including but not limited to bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

e.    "Described Premises"

The Named Insured's property location that is stated in the Declarations Page issued to the Named Insured Member by CIBA Insurance Services.

f.    "Earth Movement"

Movement of the earth, including loss or damage caused by, resulting from, contributed to, or aggravated by any natural or manmade "earth movement", including but not limited to earthquake, landslide, mud flow, volcanic eruption, earth sinking, subsidence, earth rising, or earth shifting.

g.    "Electronic Data Processing Equipment "

"Electronic Data Processing Equipment"  shall include, but not be limited to, transferring equipment, computer systems, telecommunications systems or electronic control equipment and component parts.

h.    "Electronic Data Processing Media"

All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles employed.

i.    "Financial Interest"

As used herein is intended to include the following:

(1)    The Named Insured's equity in the insured location as identified by its "Property Identification Number";

(2)    The value of the insured's loan up to and including the policy limits; or,

(3)    Registered legal ownership in the insured location.

j.    "Fine Arts"

"Fine Arts" shall include, but not be limited to, bona fide works of art, works of rarity, historical value or artistic merit, photograph, (positives and negatives) lithographs, illustrations, galley proofs, original records, and similar properties.

k.    "Fire Brigade Charges/Fire Extinguishing Expenses"

Firefighting and/or containment charges and/or fire department service charges and other extinguishing expenses for which the Insured is assessed.

l.    "Flood"

A general and temporary condition of partial or complete inundation of normally dry land areas from:

    (1)      The unusual and rapid accumulation or runoff of surface waters from any source;

    (2)      The overflow of inland or tidal waters; or

    (3)      Waves, tides or tidal waves.

m.    "Occurrence"

The term "occurrence" shall mean any one loss, disaster, casualty, or series of losses, disasters, or casualties, arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, riot, riot attending a strike, civil commotion, and vandalism one event shall be construed to be all losses arising during a continuous period of 72 hours.

n.    "Property Identification Number" (PID)

The term "Property Identification Number" or PID shall mean the individual number assigned to the Named Insured's property location that is stated in the Declarations Page issued to the Named Insured by CIBA Insurance Services.

o.    "Tier 1 and 2" Counties

The term "Tier 1 and 2" includes all counties and parishes in the states listed below where the words "Entire State" appear under the name of the state and the named counties, parishes and cities that are listed under other states:

Alabama

| Baldwin | Covington | Geneva | Monroe |
| Clarke | Escambia | Mobile | Washington |

Connecticut

| Fairfield | Litchfield | New Haven | Tolland |
| Hartford | Middlesex | New London | Windham |

Delaware

| Kent | New Castle | Sussex |

Florida
Entire State

Georgia

| Brantley | Camden | Effingham | Liberty | Tattnall |
| Bryan | Charlton | Evans | Long | Wayne |
| Bulloch | Chatham | Glynn | McIntosh | |

Hawaii
Entire State

Louisiana

| Acadia | Jefferson Davis | Plaquemines | St. John the Baptist | Tangipahoa |
| Assumption | Jefferson | St. Bernard | St. Martin | Terrebone |
| Calcasieu | Lafayette | St. Charles | St. Mary | Vermilion |
| Cameron | Lafourche | St. James | St. Tammany | Washington |
| Iberia | Orleans | | | |

Maine

| Androscoggin | Kennebec | Oxford | Sagadahoc | Washington |
| Cumberland | Knox | Penobscot | Waldo | York |
| Hancock | Lincoln | | | |

### Maryland

| | | | | |
|---|---|---|---|---|
| Anne Arundel | Caroline | Dorchester | Prince George's | Talbot |
| Baltimore | Carroll | Harford | Queen Anne's | Wicomico |
| Baltimore City | Cecil | Howard | Somerset | Worcester |
| Calvert | Charles | Kent | St. Mary's | |

### Massachusetts

| | | | | |
|---|---|---|---|---|
| Barnstable | Dukes | Middlesex | Norfolk | Suffolk |
| Bristol | Essex | Nantucket | Plymouth | Worcester |

### Mississippi

| | | | | |
|---|---|---|---|---|
| George | Harrison | Jackson | Perl River | Stone |
| Hancock | | | | |

### New Hampshire

| | | | | |
|---|---|---|---|---|
| Belknap | Hillsboro | Merrimack | Rockingham | Strafford |
| Carrol | | | | |

### New Jersey

| | | | | |
|---|---|---|---|---|
| Atlantic | Cape May | Hudson | Monmouth | Salem |
| Bergen | Cumberland | Mercer | Ocean | Somerset |
| Burlington | Essex | Middlesex | Passaic | Union |
| Camden | Gloucester | | | |

### New York

| | | | | |
|---|---|---|---|---|
| Bronx | Nassau | Putnam | Richmond | Suffolk |
| Kings | New York | Queens | Rockland | Westchester |

### North Carolina

| | | | | |
|---|---|---|---|---|
| Beaufort | Chowan | Gates | Martin | Pender |
| Bertie | Columbus | Halifax | New Hanover | Perquimans |
| Bladen | Craven | Hertford | Northampton | Pitt |
| Brunswick | Currituck | Hyde | Onslow | Sampson |
| Camden | Dare | Jones | Pamlico | Tyrrell |
| Carteret | Duplin | Lenoir | Pasquotank | Washington |

### Pennsylvania

| | | | | |
|---|---|---|---|---|
| Bucks | Delaware | Lancaster | Philadelphia | York |
| Chester | | | | |

### Rhode Island

| | | | | |
|---|---|---|---|---|
| Bristol | Kent | Newport | Providence | Washington |

### South Carolina

| | | | | |
|---|---|---|---|---|
| Beaufort | Colleton | Florence | Horry | Marion |
| Berkeley | Dillon | Georgetown | Jasper | Williamsburg |
| Charleston | Dorchester | Hampton | | |

### Texas

| | | | | |
|---|---|---|---|---|
| Aransas | Fort Bend | Jasper | Live Oak | Refugio |
| Bee | Galveston | Jefferson | Matagorda | San Patricio |
| Brazoria | Goliad | Jim Wells | Montgomery | Victoria |
| Brooks | Hardin | Kenedy | Newton | Waller |
| Calhoun | Harris | Kleberg | Nueces | Wharton |
| Cameron | Hildago | Lavaca | Orange | Willacy |
| Chambers | Jackson | Liberty | | |

<u>Virginia</u>

| | | | | |
|---|---|---|---|---|
| Accomack | Hampton City | Mathews | Poquoson | Suffok |
| Charles City | Hopewell City | Middlesex | Portsmouth | Surry |
| Chesapeake | Isle of Wight | New Kent | Prince George | Sussex |
| Colonial Heights City | James City | Newport News | Prince William | Virginia Beach |
| Essex | King and Queen | Norfolk City | Richmond | Westmoreland |
| Fairfax | King George | Northampton | Southampton | Williamsburg |
| Franklin City | King William | Northumberland | Stafford | York |
| Gloucester | Lancaster | | | |

p.       "Vacant"

The term "vacant" means that less than 25% of the total rentable square footage of a "building" is rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations.  Customary operations are further defined as the common operations and activities of the lessee or sub-lessee when using the building for its intended purpose.

q.       "Water Damage"

Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the "described premises" and contains water or steam.

# Equipment Breakdown Coverage Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this Insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Section G - DEFINITIONS. Examples are shown for illustrative purposes only and do not represent predicted or expected outcomes.

**A. COVERAGE**

This Equipment Breakdown Coverage provides insurance for a Covered Cause of Loss as defined in A.1. below. In the event of a Covered Cause of Loss, we will pay for loss as described in A.2. below.

**1. Covered Cause of Loss – "Accident"**

The Covered Cause of Loss for this Equipment Breakdown Coverage is an "accident." Without an "accident," there is no Equipment Breakdown Coverage.

**a. "Accident"** means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

(1) Mechanical breakdown, including rupture or bursting caused by centrifugal force;

(2) Artificially generated electrical current, including electrical arcing, that damages electrical devices, appliances or wires;

(3) Explosion, other than combustion explosion, of steam boilers, steam piping, steam engines or steam turbines;

(4) An event inside steam boilers, steam pipes, steam engines or steam turbines that damages such equipment;

(5) An event inside hot water boilers or other water heating equipment that damages such equipment; or

(6) Bursting, cracking or splitting.

"Accident" does not include any condition or event listed in Definition G.1.b.

**b. "Covered Equipment"** means the following:

(1) Unless specified otherwise in the Declarations:

(a) Equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

(b) Equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

"Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

(2) Except as specifically provided for under Off Premises Property Damage, Service Interruption, Contingent Business Income, paragraph (2) of Perishable Goods and Civil Authority, such equipment must be at a location described in the Declarations and must be owned or leased by you or operated under your control.

"Covered equipment" does not include any property listed in Definition G.8.b.

**2. Coverages Provided**

This section lists the coverages that may apply in the event of an "accident." Each coverage is subject to a specific limit as shown in the Declarations. See paragraph C.2. for details.

These coverages apply only to the direct result of an "accident." For each coverage, we will pay only for that portion of the loss, damage or expense that is solely attributable to the "accident."

**a. Property Damage**

We will pay for physical damage to "covered property" that is at a location indicated in the Declarations at the time of the "accident."

**b. Off Premises Property Damage**

Includes copyright material of Insurance Services Office, Inc. with its permission.

If you have transportable "covered equipment" that, at the time of the "accident," is within the Coverage Territory, but is not:

(1) At a location indicated in the Declarations; or

(2) At any other location owned or leased by you,

we will pay for physical damage to such "covered equipment."

**c.  Business Income**

(1) We will pay your actual loss of "business income" during the "period of restoration" that results directly from the necessary total or partial interruption of your business.

(2) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(3) We will consider the actual experience of your business before the "accident" and the probable experience you would have had without the "accident" in determining the amount of our payment.

**d.  Extra Expense**

We will pay the reasonable and necessary "extra expense" to operate your business during the "period of restoration."

**e.  Service Interruption**

We will pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of an "interruption of service."

**f.  Contingent Business Income**

We will pay for your loss and expense as defined under Business Income and Extra Expense coverages that:

(1) Results from an "interruption of supply"; or

(2) Results from an "accident" to an "anchor location."

**g.  Perishable Goods**

(1) We will pay for physical damage to "perishable goods" due to "spoilage."

(2) We will also pay for physical damage to "perishable goods" due to "spoilage" that is the result of an "interruption of service."

(3) We will also pay for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

(4) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**h.  Data Restoration**

(1) We will pay for your reasonable and necessary cost to research, replace or restore lost "data."

(2) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of h.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Data Restoration limit.

**i.  Demolition**

(1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:

(a) Requires the demolition of a building that is otherwise reparable;

(b) Is in force at the time of the "accident"; and

(c) Is not addressed under Hazardous Substances coverage.

(2) We will pay for the following additional costs to comply with such ordinance or law:

(a) Your actual and necessary cost to demolish and clear the site of

the undamaged parts of the building; and

   (b) Your actual and necessary cost to reconstruct the undamaged parts of the building.

(3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the "accident."

(4) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of i.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Demolition limit.

**j. Ordinance or Law**

(1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:

   (a) Regulates the construction or repair of buildings, including "building utilities";

   (b) Is in force at the time of the "accident"; and

   (c) Is not addressed under Demolition coverage or Hazardous Substances coverage.

(2) We will pay for the following additional costs to comply with such ordinance or law:

   (a) Your actual and necessary cost to repair the damaged portions of the building;

   (b) Your actual and necessary cost to reconstruct the damaged portions of the building; and

   (c) Your actual and necessary cost to bring undamaged portions of the building into compliance with the ordinance or law.

(3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been

in force at the time of the "accident."

(4) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of j.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Ordinance or Law limit.

**k. Expediting Expenses**

With respect to your damaged "covered property," we will pay the reasonable extra cost to:

(1) Make temporary repairs; and

(2) Expedite permanent repairs or permanent replacement.

**l. Hazardous Substances**

(1) We will pay for the additional cost to repair or replace "covered property" because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in Perishable Goods, A.2.g.(3).

(2) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

(3) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of l.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Hazardous Substances limit.

**m. Course of Construction**

This coverage is automatically included and does not need to be indicated in the Declarations.

(1) You will notify us promptly of any expansion or rehabilitation of any location described in the Declarations.

Includes copyright material of Insurance Services Office, Inc. with its permission.

(2)   All coverages applicable to any location described in the Declarations are extended to an expansion or rehabilitation of that location.

(3)   This coverage begins at the time you begin the expansion or rehabilitation project.

(4)   We will charge you additional premium for newly acquired equipment from the date the equipment is installed.

n.   **Civil Authority**

We will pay for your loss and expense as defined under Business Income and Extra Expense coverages that results from a civil authority prohibiting access to a location described in the Declarations due solely to an "accident" that causes damage to property within one mile of such location, provided that such action is taken in response to dangerous physical conditions resulting from the "accident," or to enable a civil authority to have unimpeded access to the damaged property.

**B.   EXCLUSIONS**

We will not pay for any excluded loss, damage or expense, even though any other cause or event contributes concurrently or in any sequence to the loss, damage or expense.

1.   We will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from an "accident."

a.   **Fire and Explosion**

(1)   Fire, including smoke from a fire.

(2)   Combustion explosion. This includes, but is not limited to, a combustion explosion of any steam boiler or other fired vessel.

(3)   Any other explosion, except as specifically provided in A.1.a.(3).

b.   **Ordinance or Law**

The enforcement of, or change in, any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operation, construction or installation, except as specifically provided in A.2.i., j. and l. (Demolition, Ordinance or Law and Hazardous Substances coverages).

c.   **Earth Movement**

Earth movement, whether natural or human-made, including but not limited to earthquake, shock, tremor, subsidence, landslide, rock fall, earth sinking, sinkhole collapse or tsunami.

d.   **Nuclear Hazard**

Nuclear reaction, detonation or radiation, or radioactive contamination, however caused.

e.   **War and Military Action**

(1)   War, including undeclared or civil war;

(2)   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3)   Insurrection, rebellion, revolution, usurped power, political violence or action taken by governmental authority in hindering or defending against any of these.

f.   **Water**

(1)   Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2)   Mudslide or mudflow; or

(3)   Water that backs up or overflows from a sewer, drain or sump.

g.   **Failure to Protect Property**

Your failure to use all reasonable means to protect "covered property" from damage following an "accident."

h.   **Fines**

Fine, penalty or punitive damage.

i.   **Mold**

Mold, fungus, mildew or yeast, including any spores or toxins created or produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean-up, remediation, containment, removal or abatement of such mold, fungus, mildew, yeast, spores or toxins. However, this exclusion does not apply to "spoilage" of personal property that is "perishable goods" to the extent that such "spoilage" is covered under Perishable Goods coverage.

j.   **Vandalism**

Includes copyright material of Insurance Services Office, Inc. with its permission.

Vandalism, meaning a willful and malicious act that causes damage or destruction.

2. We will not pay for an "accident" caused by or resulting from any of the following causes of loss:

    a. Lightning.

    b. Windstorm or Hail. However, this exclusion does not apply when:

        (1) "Covered equipment" located within a building or structure suffers an "accident" that results from wind-blown rain, snow, sand or dust; and

        (2) The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

    c. Collision or any physical contact caused by a "vehicle." This includes damage by objects falling from aircraft. However, this exclusion does not apply to any unlicensed "vehicles" which you own or which are operated in the course of your business.

    d. Riot or Civil Commotion.

    e. Leakage or discharge of any substance from an automatic sprinkler system, including collapse of a tank that is part of the system.

    f. Volcanic Action.

    g. An electrical insulation breakdown test.

    h. A hydrostatic, pneumatic or gas pressure test.

    i. Water or other means intended to extinguish a fire, even when such an attempt is unsuccessful.

    j. Elevator collision.

3. We will not pay for an "accident" caused by or resulting from any of the following perils, if such peril is a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

    a. Falling Objects.

    b. Weight of Snow, Ice or Sleet.

    c. Water Damage, meaning discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance containing water or steam.

    d. Collapse.

    e. Breakage of Glass.

    f. Freezing caused by cold weather.

    g. Discharge of molten material from equipment, including the heat from such discharged material.

4. Exclusions 2. and 3. do not apply if all of the following are true:

    a. The excluded peril occurs away from any location described in the Declarations and causes an electrical surge or other electrical disturbance;

    b. Such surge or disturbance is transmitted through utility service transmission lines to a described location;

    c. At the described location, the surge or disturbance results in an "accident" to "covered equipment" that is owned or operated under the control of you or your landlord; and

    d. The loss, damage or expense caused by such surge or disturbance is not a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

5. With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

    a. Loss associated with business that would not or could not have been carried on if the "accident" had not occurred;

    b. Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business;

    c. That part of any loss that extends beyond or occurs after the "period of restoration." This includes, but is not limited to:

        (1) "Business income" that would have been earned after the "period of restoration," even if such loss is the direct result of the suspension, lapse or cancellation of a contract during the "period of restoration"; and

        (2) "Extra expense" to operate your business after the "period of restoration," even if such loss is contracted for and paid during the "period of restoration."

Includes copyright material of Insurance Services Office, Inc. with its permission.

    d. Any increase in loss resulting from an agreement between you and your customer or supplier. This includes, but is not limited to, contingent bonuses or penalties, late fees, demand charges, demurrage charges and liquidated damages.

6. With respect to Off Premises Property Damage coverage, Service Interruption coverage, Contingent Business Income coverage, paragraph (2) of Perishable Goods coverage and Civil Authority coverage, we will also not pay for an "accident" caused by or resulting from any of the perils listed in Exclusion 3. above, whether or not such peril is a covered cause of loss under another coverage part or policy of insurance you have.

7. With respect to Data Restoration coverage, we will also not pay to reproduce:

    a. Software programs or operating systems that are not commercially available; or

    b. "Data" that is obsolete, unnecessary or useless to you.

8. With respect to Demolition and Ordinance or Law coverages, we will also not pay for:

    a. Increased demolition or reconstruction costs until they are actually incurred; or

    b. Loss due to any ordinance or law that:

        (1) You were required to comply with before the loss, even if the building was undamaged; and

        (2) You failed to comply with;

    whether or not you were aware of such non-compliance.

## C. LIMITS OF INSURANCE

Any payment made under this Equipment Breakdown Coverage will not be increased if more than one insured is shown in the Declarations or if you are comprised of more than one legal entity.

**1. Equipment Breakdown Limit**

The most we will pay for loss, damage or expense arising from any "one accident" is the amount shown as the Equipment Breakdown Limit in the Declarations.

**2. Coverage Limits**

    a. The limit of your insurance under each of the coverages listed in A.2. from loss, damage or expense arising from any "one accident" is the amount indicated for that coverage in the Declarations. These limits are a part of, and not in addition to, the Equipment Breakdown Limit. If an amount of time is shown, coverage will continue for no more than that amount of time immediately following the "accident." If a coverage is shown as "Included," that coverage is provided up to the remaining amount of the Equipment Breakdown Limit. If no limit is shown in the Declarations for a coverage, or if a coverage is shown as Excluded in the Declarations, that coverage will be considered to have a limit of $0.

    b. If two or more coverage limits apply to the same loss or portion of a loss, we will pay only the smallest of the applicable limits for that loss or portion of the loss. This means that if:

        (1) You have a loss under one of the coverages listed in A.2.; and

        (2) All or part of the loss is not covered because the applicable coverage is Excluded or has a limit that is less than the amount of your loss,

    we will not pay the remaining amount of such loss under any other coverage.

**EXAMPLE 1**

Property Damage Limit: $7,000,000

Business Income Limit: $1,000,000

Newly Acquired Locations Limit: $500,000

There is an "accident" at a newly acquired location that results in a Property Damage loss of $200,000 and a Business Income loss of $800,000.

We will pay $500,000, because the entire loss is subject to the Newly Acquired Locations Limit of $500,000.

**EXAMPLE 2**

Property Damage Limit: $7,000,000

Business Income Limit: $500,000

Hazardous Substances Limit: $25,000

There is an "accident" that results in a loss of $100,000. If no "hazardous substance" had been involved, the property damage loss would have been $10,000 and the business income loss would have been $20,000. The presence of the "hazardous substance" increased the loss by $70,000 (increasing the clean up and repair costs by $30,000 and increasing the business income loss by $40,000).

We will pay $55,000 ($10,000 property damage plus $20,000 business income plus $25,000 hazardous substances).

## D. DEDUCTIBLES

**1. Deductibles for Each Coverage**

    a. Unless the Declarations indicate that your

deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

b.  We will not pay for loss, damage or expense under any coverage until the amount of the covered loss or damage exceeds the deductible amount indicated for that coverage in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit indicated in the Declarations.

c.  If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

d.  The following applies when a deductible is expressed as a function of the horsepower rating of a refrigerating or air conditioning system. If more than one compressor is used with a single system, the horsepower rating of the largest motor or compressor will determine the horsepower rating of the system.

**2.  Direct and Indirect Coverages**

a.  Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Declarations.

b.  Unless more specifically indicated in the Declarations:

(1)  Indirect Coverages Deductibles apply to Business Income and Extra Expense loss, regardless of where such coverage is provided in this Equipment Breakdown Coverage; and

(2)  Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this Equipment Breakdown Coverage.

**EXAMPLE**

An "accident" results in covered losses as follows:

$100,000  Total Loss (all applicable coverages)

$ 35,000  Business Income Loss (including $2,000 of business income loss payable under Data Restoration coverage)

$   5,000  Extra Expense Loss

In this case, the Indirect coverages loss totals $40,000 before application of the

Indirect Coverage Deductible. The Direct coverages loss totals the remaining $60,000 before application of the Direct Coverage Deductible.

**3.  Application of Deductibles**

a.  **Dollar Deductibles**

We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable deductible or deductibles shown in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible or deductibles, subject to the applicable limits shown in the Declarations.

b.  **Time Deductibles**

If a time deductible is shown in the Declarations, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

c.  **Multiple of Average Daily Value (ADV) Deductibles**

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the "business income" that would have been earned during the period of interruption had no "accident" occurred, divided by the number of working days in that period. The ADV applies to the "business income" value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."

The number indicated in the Declarations will be multiplied by the ADV as determined above. The result will be used as the applicable deductible.

**EXAMPLE**

Business is interrupted, partially or completely, for 10 working days. If there had been no "accident," the total "business income" at the affected location for those 10 working days would have been $5,000.

---

Includes copyright material of Insurance Services Office, Inc. with its permission.

The Indirect Coverages Deductible is 3 Times ADV.

$5,000 / 10 = $500 ADV

3 X $500 = $1,500 Indirect Coverages Deductible

**d. Percentage of Loss Deductibles**

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated Minimum Deductible, the Minimum Deductible will be the applicable deductible.

**E. LOSS CONDITIONS**

The following conditions apply:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Brands and Labels**

a. If branded or labeled merchandise that is "covered property" is damaged by an "accident," but retains a salvage value, you may:

(1) Stamp the word SALVAGE on the merchandise or its containers if the stamp will not physically damage the merchandise; or

(2) Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

b. We will pay for any reduction in value of the salvage merchandise resulting from either of the two actions listed in 2.a. above, subject to all applicable limits.

c. We will also pay the reasonable and necessary expenses you incur to perform either of the two actions described in 2.a. above. We will pay for such expenses to the extent that they do not exceed the amount recoverable from salvage.

d. If a Brands and Labels Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

**3. Coinsurance - Business Income Coverage**

a. Unless otherwise shown in the Declarations, Business Income coverage is

subject to coinsurance. This means that we will not pay the full amount of any "business income" loss if the "business income actual annual value" is greater than the "business income estimated annual value" at the affected location at the time of the "accident." Instead, we will determine the most we will pay using the following steps:

(1) Divide the "business income estimated annual value" by the "business income actual annual value" at the time of the "accident";

(2) Multiply the total amount of the covered loss of "business income" by the amount determined in paragraph (1) above;

(3) Subtract the applicable deductible from the amount determined in paragraph (2) above;

The resulting amount, or the Business Income Limit, whichever is less, is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

b. Coinsurance applies separately to each insured location.

c. If you report a single "business income estimated annual value" for more than one location, without providing information on how that amount should be distributed among the locations, we will distribute the amount evenly among all applicable locations.

**EXAMPLE 1 (Underinsurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $100,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $100,000 / $200,000 = .5

Step 2: $40,000 x .5 = $20,000

Step 3: $20,000 - $5,000 = $15,000

The total "business income" loss recovery, after deductible, would be $15,000. For the remainder, you will either have to rely on other

insurance or absorb the loss yourself.

We will also charge you an additional premium in recognition of the "business income actual annual value."

**EXAMPLE 2 (Adequate insurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $200,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $200,000 / $200,000 = 1

Step 2: $40,000 x 1 = $40,000

Step 3: $40,000 - $5,000 = $35,000

The total "business income" loss recovery, after deductible, would be $35,000.

**4. Coinsurance – Coverages other than Business Income**

Coverages other than Business Income may be subject to coinsurance if so indicated in the Declarations. If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a. We will not pay the full amount of any loss if the value of the property subject to the coverage at the time of the "accident" times the Coinsurance percentage shown for it in the Declarations is greater than the applicable limit.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of the property subject to the coverage at the time of the "accident" by the Coinsurance percentage;

(2) Divide the applicable limit by the amount determined in step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the amount determined in step (2); and

(4) Subtract the deductible from the amount determined in step (3).

We will pay the amount determined in step (4) or the applicable limit, whichever is less. For the remainder, you will either have

to rely on other insurance or absorb the loss yourself.

b. Coinsurance applies separately to each insured location.

**EXAMPLE 1 (Underinsurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $200,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the "accident" is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $200,000 x 80% = $160,000

Step 2: $100,000/$160,000 = .625

Step 3: $60,000 x .625 = $37,500

Step 4: $37,500 - $5,000 = $32,500

The total Perishable Goods loss recovery, after deductible, would be $32,500. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE 2 (Adequate insurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $100,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the "accident" is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $100,000 x 80% = $80,000

Step 2: $100,000/$80,000 = 1.25

Coinsurance does not apply.

Step 3: $60,000 - $5,000 = $55,000

The total Perishable Goods loss recovery, after deductible, would be $55,000.

**5. Defense**

We have the right, but are not obligated, to defend you against suits arising from claims of owners of property in your care, custody or control. When we do this, it will be at our expense.

**6. Duties in the Event of Loss or Damage**

You must see that the following are done in the event of loss or damage:

a. Give us a prompt notice of the loss or damage, including a description of the

Includes copyright material of Insurance Services Office, Inc. with its permission.

property involved.

b. You must reduce your loss, damage or expense, if possible, by:

(1) Protecting property from further damage. We will not pay for your failure to protect property, as stated in Exclusion B.1.g.;

(2) Resuming business, partially or completely at the location of loss or at another location;

(3) Making up lost business within a reasonable amount of time. This includes working extra time or overtime at the location of loss or at another location. The reasonable amount of time does not necessarily end when the operations are resumed;

(4) Using merchandise or other property available to you;

(5) Using the property or services of others; and

(6) Salvaging the damaged property.

c. Allow us a reasonable time and opportunity to examine the property and premises before repair or replacement is undertaken or physical evidence of the "accident" is removed. But you must take whatever measures are necessary for protection from further damage.

d. Make no statement that will assume any obligation or admit any liability, for any loss, damage or expense for which we may be liable, without our consent.

e. Promptly send us any legal papers or notices received concerning the loss, damage or expense.

f. As often as may be reasonably required, permit us to inspect your property, premises and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

g. If requested, permit us to examine you and any of your agents, employees and representatives under oath. We may examine any insured under oath while not in the presence of any other insured. Such examination:

(1) May be at any time reasonably required;

(2) May be about any matter relating to this insurance, your loss, damage or expense, or your claim, including, but not limited to, your books and records; and

(3) May be recorded by us by any methods we choose.

h. Send us a signed, sworn proof of loss containing the information we request. You must do this within 60 days after our request.

i. Cooperate with us in the investigation and settlement of the claim.

**7. Errors and Omissions**

a. We will pay your loss covered by this Equipment Breakdown coverage if such loss is otherwise not payable solely because of any of the following:

(1) Any error or unintentional omission in the description or location of property as insured under this policy;

(2) Any failure through error to include any premises owned or occupied by you at the inception of this policy; or

(3) Any error or unintentional omission by you that results in cancellation of any premises insured under this policy.

b. No coverage is provided as a result of any error or unintentional omission by you in the reporting of values or the coverage you requested.

c. It is a condition of this coverage that such errors or unintentional omissions shall be reported and corrected when discovered. The policy premium will be adjusted accordingly to reflect the date the premises should have been added had no error or omission occurred.

d. If an Errors and Omissions Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

**8. Proving Your Loss**

It is your responsibility, at your own expense, to provide documentation to us:

a. Demonstrating that the loss, damage or expense is the result of an "accident" covered under this Equipment Breakdown Coverage; and

b. Calculating the dollar amount of the loss,

damage and expense that you claim is covered.

Your responsibility in 8.a. above is without regard to whether or not the possible "accident" occurred at your premises or involved your equipment.

**9. Salvage and Recoveries**

When, in connection with any loss under this Equipment Breakdown Coverage, any salvage or recovery is received after the payment for such loss, the amount of the loss shall be refigured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

**10. Valuation**

We will determine the value of "covered property" as follows:

a. Except as specified otherwise, our payment for damaged "covered property" will be the smallest of:

(1) The cost to repair the damaged property;

(2) The cost to replace the damaged property on the same site; or

(3) The amount you actually spend that is necessary to repair or replace the damaged property.

b. The amount of our payment will be based on the most cost-effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

c. Except as described in d. below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

d. Environmental, Safety and Efficiency Improvements

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that we agree is better for the environment, safer for people or more energy efficient than the equipment being replaced, subject to the following conditions:

(1) We will not pay more than 150% of what the cost would have been to

replace with like kind and quality;

(2) We will not pay to increase the size or capacity of the equipment;

(3) This provision only applies to Property Damage coverage;

(4) This provision does not increase any of the applicable limits;

(5) This provision does not apply to any property valued on an Actual Cash Value basis; and

(6) This provision does not apply to the replacement of component parts.

e. The following property will be valued on an Actual Cash Value basis:

(1) Any property that does not currently serve a useful or necessary function for you;

(2) Any "covered property" that you do not repair or replace within 24 months after the date of the "accident"; and

(3) Any "covered property" for which Actual Cash Value coverage is specified in the Declarations.

Actual Cash Value includes deductions for depreciation.

f. If any one of the following conditions is met, property held for sale by you will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that otherwise would have applied:

(1) The property was manufactured by you;

(2) The sales price of the property is less than the replacement cost of the property; or

(3) You are unable to replace the property before its anticipated sale.

g. Except as specifically provided for under Data Restoration coverage, "data" and "media" will be valued on the following basis:

(1) For mass-produced and commercially available software, at the replacement cost.

(2) For all other "data" and "media," at the cost of blank "media" for reproducing the records. We will not pay for "data" representing financial records based on the face value of such records.

Includes copyright material of Insurance Services Office, Inc. with its permission.

h. Air conditioning or refrigeration equipment that utilizes a refrigerant containing CFC (chlorofluorocarbon) substances will be valued at the cost to do the least expensive of the following:

(1) Repair or replace the damaged property and replace any lost CFC refrigerant;

(2) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(3) Replace the system with one using a non-CFC refrigerant.

In determining the least expensive option, we will include any associated Business Income or Extra Expense loss. If option (2) or (3) is more expensive than (1), but you wish to retrofit or replace anyway, we will consider this better for the environment and therefore eligible for valuation under paragraph d., Environmental, Safety and Efficiency Improvements. In such case, E.10.d.(1) is amended to read: "We will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality."

**F. ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Loss Conditions:

**1. Additional Insured**

If a person or organization is designated in this Equipment Breakdown Coverage as an additional insured, we will consider them to be an insured under this Equipment Breakdown Coverage only to the extent of their interest in the "covered property."

**2. Bankruptcy**

The bankruptcy or insolvency of you or your estate will not relieve you or us of any obligation under this Equipment Breakdown Coverage.

**3. Cancellation**

a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of

cancellation if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**5. Concealment, Misrepresentation or Fraud**

We will not pay for any loss and coverage will be void if you or any additional insured at any time:

a. Intentionally cause or allow loss, damage or expense in order to collect on insurance; or

b. Intentionally conceal or misrepresent a material fact concerning:

(1) This Equipment Breakdown Coverage;

(2) The "covered property";

(3) Your interest in the "covered property"; or

(4) A claim under this Equipment Breakdown Coverage.

**6. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

Includes copyright material of Insurance Services Office, Inc. with its permission.

7. **Inspections and Surveys**

    a.    We have the right to:

        (1)  Make inspections and surveys at any time;

        (2)  Give you reports on the conditions we find; and

        (3)  Recommend changes.

    b.    We are not obligated to make any inspections, surveys, reports or recommendations and any such actions relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

        (1)  Are safe or healthful; or

        (2)  Comply with laws, regulations, codes or standards.

    c.    Paragraphs a. and b. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

8. **Jurisdictional Inspections**

It is your responsibility to comply with any state or municipal boiler and pressure vessel regulations. If any "covered equipment" that is "covered property" requires inspection to comply with such regulations, at your option we agree to perform such inspection.

9. **Legal Action Against Us**

No one may bring a legal action against us under this Equipment Breakdown Coverage unless:

    a.    There has been full compliance with all the terms of this Equipment Breakdown Coverage; and

    b.    The action is brought within two years after the date of the "accident" or

    c.    We agree in writing that you have an obligation to pay for damage to "covered property" of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this policy to bring us into an action to determine your liability.

10. **Liberalization**

If we adopt any standard form revision for

general use that would broaden the coverage under this Equipment Breakdown Coverage without additional premium, the broadened coverage will apply to this Equipment Breakdown Coverage commencing on the date that such revision becomes effective in the jurisdiction where the "accident" occurs.

11. **Loss Payable**

    a.    We will pay you and the loss payee shown in the Declarations for loss covered by this Equipment Breakdown Coverage, as interests may appear. The insurance covers the interest of the loss payee unless the loss results from conversion, secretion or embezzlement on your part or on the part of the loss payee.

    b.    We may cancel the policy as allowed by the Cancellation Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel, we will mail you and the loss payee the same advance notice.

    c.    If we make any payment to the loss payee, we will obtain their rights against any other party.

12. **Maintaining Your Property and Equipment**

It is your responsibility to appropriately maintain your property and equipment. We will not pay your costs to maintain, operate, protect or enhance your property or equipment, even if such costs are to comply with our recommendations or prevent loss, damage or expense that would be covered under this policy.

13. **Mortgage Holders**

    a.    The term mortgage holder includes trustee.

    b.    We will pay for direct damage to "covered property" due to an "accident" to "covered equipment" to you and each mortgage holder shown in the Declarations in their order of precedence, as interests in the "covered property" may appear.

    c.    The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the "covered property."

    d.    If we deny your claim because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage, the mortgage holder will still have the right to receive loss payment, provided the mortgage holder does all of the following:

        (1)  Pays any premium due under this

Equipment Breakdown Coverage at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so;

(3) Has notified us of any change in ownership or material change in risk known to the mortgage holder; and

(4) Has complied with all other terms and conditions of this Policy.

All of the terms of this Equipment Breakdown Coverage will then apply directly to the mortgage holder.

e. If we pay the mortgage holder for any loss and deny payment to you because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage:

(1) The mortgage holder's right under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

h. If we suspend coverage, it will also be suspended as respects the mortgage holder. We will give written notice of the suspension to the mortgage holder.

**14. Other Insurance**

If there is other insurance that applies to the same loss, damage or expense, this Equipment Breakdown Coverage shall apply only as excess insurance after all other applicable insurance has been exhausted.

**15. Policy Period, Coverage Territory**

Under this Equipment Breakdown Coverage:

a. The "accident" must occur during the Policy Period, but expiration of the policy does not limit our liability.

b. The "accident" must occur within the following Coverage Territory:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

c. With respect to Off Premises Property Damage coverage only, the "accident" may occur in any country except one in which the United States has imposed sanctions, embargoes or similar restrictions on the provision of insurance.

**16. Premiums**

The first Named Insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

**17. Privilege to Adjust with Owner**

In the event of loss, damage or expense involving property of others in your care, custody or control, we have the right to settle the loss, damage or expense with respect to such property with the owner of the property. Settlement with owners of that property will satisfy any claim of yours.

**18. Suspension**

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by delivering or mailing a written notice of suspension to:

a. Your last known address; or

b. The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment."

If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**19. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**20. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Equipment Breakdown Coverage has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to an "accident."

b. After an "accident" only if, at time of the "accident," that party is one of the following:

    (1) Someone insured by this Policy; or

    (2) A business firm:

        (a) Owned or controlled by you; or

        (b) That owns or controls you.

**G. DEFINITIONS**

**1. "Accident"**

a. "Accident" is defined in A.1.a.

b. None of the following is an "accident," however caused and without regard to whether such condition or event is normal and expected or unusual and unexpected:

    (1) Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear;

    (2) Any gradually developing condition;

    (3) Any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind;

    (4) Contamination by a "hazardous substance"; or

    (5) Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

**2. "Anchor Location"** means a location, operated by others, upon which you depend to attract customers to your location. An "anchor location" must have been open for business for at least six months prior to the "accident," and must be located within one mile of your location.

**3. "Boilers and Vessels"** means:

a. Boilers;

b. Steam piping;

c. Piping that is part of a closed loop used to conduct heat from a boiler;

d. Condensate tanks; and

e. Unfired vessels which, during normal usage, operate under vacuum or pressure, other than the weight of contents.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

**4. "Building Utilities"** means "covered equipment" permanently mounted on or in a building and used to provide any of the following services within the building: heating, ventilating, air conditioning, electrical power, hot water, elevator or escalator services, natural gas service or communications. "Building utilities" does not include personal property or equipment used in manufacturing or processing.

**5. "Buried Vessels or Piping"** means any piping or vessel buried or encased in the earth, concrete or other material, whether above or below grade, or in an enclosure which does not allow access for inspection and repair.

**6. "Business Income"** means the sum of:

a. The Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

b. Continuing normal and necessary operating expenses incurred, including employee payroll.

**7. "Business Income Actual Annual Value"**

means the "business income" for the current fiscal year that would have been earned had no "accident" occurred.

In calculating the "business income actual annual value," we will take into account the actual experience of your business before the "accident" and the probable experience you would have had without the "accident."

8. **"Business Income Estimated Annual Value"** means the anticipated "business income" reported to us and shown in the Declarations. If no value is shown in the Declarations, the "business income estimated annual value" will be the most recent report of anticipated "business income" values on file with us.

9. **"Covered Equipment"**
   a. "Covered Equipment" is defined in A.1.b.
   b. None of the following is "covered equipment":
      (1) Structure, including but not limited to the structural portions of buildings and towers, and scaffolding;
      (2) Foundation;
      (3) Cabinet, compartment, conduit or ductwork;
      (4) Insulating or refractory material;
      (5) "Buried vessels or piping";
      (6) Waste, drainage or sewer piping;
      (7) Piping, valves or fittings forming a part of a sprinkler or fire suppression system;
      (8) Water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;
      (9) "Vehicle" or any equipment mounted on a "vehicle";
      (10) Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;
      (11) Dragline, excavation or construction equipment;
      (12) Equipment manufactured by you for sale; or
      (13) "Data."

10. **"Covered Property"**
    a. "Covered Property" means property that you own or property that is in your care, custody or control and for which you are legally liable. Such property must be at a location described in the Declarations except as provided under Off Premises

Property Damage coverage.
    b. None of the following is "covered property":
      (1) Accounts, bills, currency, deeds or other evidences of debt, money, notes or securities;
      (2) Fine arts, jewelry, furs or precious stones;
      (3) Precious metal, unless forming a part of "covered equipment";
      (4) Animals;
      (5) Contraband, or property in the course of illegal transportation or trade;
      (6) Land (including land on which the property is located), water, trees, growing crops or lawns; or
      (7) Shrubs or plants, unless held indoors for retail sale.

11. **"Data"** means information or instructions stored in digital code capable of being processed by machinery.

12. **"Electrical Generating Equipment"**
    a. "Electrical Generating Equipment" means equipment which converts any other form of energy into electricity. This includes, but is not limited to, the following:
      (1) Boilers used primarily to provide steam for one or more turbine-generator units;
      (2) Turbine-generators (including steam, gas, water or wind turbines);
      (3) Engine-generators;
      (4) Fuel cells or other alternative electrical generating equipment;
      (5) Electrical transformers, switchgear and power lines used to convey the generated electricity; and
      (6) Associated equipment necessary for the operation of any of the equipment listed in (1) through (5) above.
    b. "Electrical Generating Equipment" does not mean:
      (1) Elevator or hoist motors that generate electricity when releasing cable; or
      (2) Equipment intended to generate electricity solely on an emergency, back-up basis.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

13. **"Extra Expense"** means the additional cost you incur to operate your business over and above

Includes copyright material of Insurance Services Office, Inc. with its permission.

the cost that you normally would have incurred to operate your business during the same period had no "accident" occurred.

14. **"Hazardous Substance"** means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

15. **"Interruption of Service"**

 a. "Interruption of Service" means a failure or disruption of the normal supply of any of the Covered Services listed in b. below, when such failure or disruption is caused by an "accident" to "covered equipment," subject to the conditions listed in c. through f. below.

 b. Covered Services are electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks and data transmission.

 c. The "covered equipment" must either be:

 (1) Owned by a company with whom you have a contract to supply you with one of the Covered Services; or

 (2) Used to supply you with one of the Covered Services and located within one mile of a location described in the Declarations.

 d. If a Service Interruption Distance Limitation is indicated in the Declarations, the "covered equipment" suffering the "accident" must be located within the indicated distance of any location described in the Declarations.

 e. Unless otherwise shown in the Declarations, no failure or disruption of service will be considered to qualify as an "interruption of service" until the failure or disruption exceeds 24 hours immediately following the "accident."

 f. "Interruption of service" does not include any failure or disruption, whether or not arising from or involving an "accident," in which a supplier could have continued to provide service to the location but chose for any reason to reduce or discontinue service.

16. **"Interruption of Supply"**

 a. "Interruption of Supply" means a failure or disruption of the normal supply of any of the Covered Contingencies listed below, when such failure or disruption is caused

by an "accident" to "covered equipment" that is located at a Contingent Business Income supplier or receiver location indicated in the Declarations. If no Contingent Business Income supplier or receiver location is indicated in the Declarations, the "covered equipment" must be owned by a supplier from whom you have received the Covered Contingency for at least six months prior to the "accident" or a receiver to whom you have supplied the Covered Contingency for at least six months prior to the "accident."

 b. Covered Contingencies are raw materials, intermediate products, finished products, packaging materials and product processing services.

17. **"Media"** means all material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

18. **"One Accident"** means all "accidents" occurring at the same time from the same event. If an "accident" causes other "accidents," all will be considered "one accident."

19. **"Ordinary Payroll"** means the Payroll Expenses associated with all employees other than executives, department managers and employees under contract.

 As used above, Payroll Expenses means all payroll, employee benefits directly related to payroll, FICA payments you pay, union dues you pay and workers compensation premiums.

 "Ordinary payroll" does not include pensions or directors fees.

 This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

20. **"Period of Restoration"** means the period of time that begins at the time of the "accident" and continues until the earlier of:

 a. The date the physical damage to "covered equipment" is repaired or replaced; or

 b. The date on which such damage could have been repaired or replaced with the exercise of due diligence and dispatch,

 plus the number of days, if any, shown in the Declarations for Extended Period of Restoration.

 As respects Civil Authority coverage only, "period of restoration" means the period of time that begins as of the time access is prohibited by action of the civil authority and continues until the earlier of:

    (a)   21 days thereafter; or

    (b)   The date access is restored.

21. **"Perishable Goods"** means any "covered property" subject to deterioration or impairment as a result of a change of conditions, including but not limited to temperature, humidity or pressure.

22. **"Production Machinery"** means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus. However, "production machinery" does not mean any boiler, or fired or unfired pressure vessel.

   This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

23. **"Spoilage"** means any detrimental change in state. This includes but is not limited to thawing of frozen goods, warming of refrigerated goods, freezing of fresh goods, solidification of liquid or molten material and chemical reactions to material in process.

24. **"Vehicle"** means any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

   However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

Includes copyright material of Insurance Services Office, Inc. with its permission.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


CYBERONE COVERAGE AND DATA COMPROMISE COVERAGE

03 CCE-001 CO 0314


In consideration of a premium charged, it is agreed that following coverage change applies, but only to coverage provided at insured locations identified by property identification numbers where the Evidence of Property Insurance issued to the Named Insured states that this endorsement applies.


CyberOne Coverage (Network Security Liability) and Data Compromise Coverage (Response Expenses and Defense and Liability) are included as provided in the following coverage forms, which are attached to this endorsement:

CyberOne Coverage - Form Number 01 C1 0314
Data Compromise Coverage – Form Number 03 DC 0314

Limits Apply "Per Account – Not "Per Location"
If a covered cause of loss occurs at more than one location in the same occurrence, the Limits of Liability in the CyberOne Coverage Form and the Data Compromise Coverage Form are the most that the Company will pay for each "Account", irrespective of the number of locations included in an "Account".


Definition:
"Account" means the sum of all insured locations that are identified with the same Account Identification Number (AIN) in the Evidences Of Commercial Property Insurance that are issued for those insured locations.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED


CIBA
Endorsement

PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBERONE COVERAGE
## NETWORK SECURITY LIABILITY

Coverage under this endorsement is subject to the following SCHEDULE:

**NETWORK SECURITY LIABILITY**

| | |
|---|---|
| **Network Security Liability Limit** | $50,000 Annual Aggregate |
| **Network Security Liability Deductible** | $5,000 Per Occurrence |

The following is added as an Additional Coverage:

## NETWORK SECURITY LIABILITY

### COVERED CAUSE OF LOSS

This Network Security Liability coverage applies only if all of the following conditions are met:

1. You first receive notice of a "network security liability suit" during the policy period for which this endorsement is applicable or any Extended Reporting Periods; and

2. Such "network security liability suit" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

### COVERAGES PROVIDED

If both of the conditions listed above in COVERED CAUSE OF LOSS have been met, then we will provide you the following coverages for loss directly arising from such "network security liability suit".

**1. Defense**

We will pay your necessary and reasonable "network security liability defense costs".

**2. Settlement Costs**

We will pay your necessary and reasonable "network security liability settlement costs".

### LIMITS

Except for post-judgment interest, the most we will pay under Network Security Liability coverage is the Network Security Liability Limit indicated for this endorsement.

The Network Security Liability Limit is an annual aggregate limit. This amount is the most we will pay for the total of all loss (other than post-judgment interest) arising out of all "network security liability suits" of which you first receive notice during the present annual policy period or any Extended Reporting Periods. This limit applies regardless of the number of "network security liability suits" of which you first receive notice during that period.

You may first receive notice of a "network security liability suit" in one policy period but it may cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "network security liability suit" (other than post-judgment interest) will be subject to the Network Security Liability Limit applicable to the policy period when notice of the "network security liability suit" was first received by you.

The Network Security Liability Limit for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security Liability Limit for the immediately preceding policy period.

### DEDUCTIBLE

The Network Security Liability coverage is subject to the Network Security Liability Deductible indicated in the SCHEDULE for this endorsement. You shall be responsible for the applicable deductible amount as respects loss arising from each "network security liability suit" covered under this endorsement.

## EXCLUSIONS, ADDITIONAL CONDITIONS AND DEFINITIONS

### EXCLUSIONS

The following additional exclusions apply to this coverage:

We will not pay for costs or loss arising from the following:

1. Loss to the internet, an internet service provider, or any computer or computer system that is not owned or leased by you and operated under your control.

2. Costs to research or correct any deficiency.

3. Any fines or penalties.

© 2013
Includes copyrighted material of Insurance Services Offices, Inc. with its permission

4. Any criminal investigations or proceedings.

5. Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

6. Your intentional or willful complicity in a covered loss event or your reckless disregard for the security of your computer system or data.

7. Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.

8. That part of any "network security liability suit" seeking any non-monetary relief.

9. Any "network security liability suit" arising from a propagation of malware or denial of service attack that occurred prior to the first inception of this CyberOne coverage endorsement or any coverage substantially similar to that described in this endorsement.

10. The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

**ADDITIONAL CONDITIONS**

The following additional conditions apply to all coverages under this endorsement.

**A. Due Diligence**

You agree to use due diligence to prevent and mitigate costs covered under this endorsement. This includes, but is not limited to, complying with reasonable and industry-accepted protocols for:

1. Providing and maintaining appropriate computer and internet security; and

2. Maintaining and updating at appropriate intervals backups of computer data.

**B. Duties in the Event of a "Network Security Liability Suit"**

1. If a "network security liability suit" is brought against you, you must:

   a. Immediately record the specifics of the "network security liability suit" and the date received; and

   b. Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "network security liability suit" is first received by you.

   c. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "network security liability suit";

   d. Authorize us to obtain records and other information;

   e. Cooperate with us in the investigation,

settlement or defense of the "network security liability suit";

   f. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply; and

   g. Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "network security liability suit".

**C. Extended Reporting Periods**

1. You shall have the right to the Extended Reporting Periods described in this section, in the event that:

   a. You or we cancel this CyberOne coverage;

   b. You or we refuse to renew this CyberOne coverage; or

   c. We renew this CyberOne coverage on an other than a claims-made basis or with a retroactive date later than the date of the first inception of this CyberOne coverage endorsement or any coverage substantially similar to that described in this endorsement;

2. If an event as specified in Paragraph 1. has occurred, you shall have the right to the following:

   a. An Automatic Extended Reporting Period of 30 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "network security liability suit" of which you first receive notice during said Automatic Extended Reporting Period for any propagation of malware or denial of service attack occurring before the end of the coverage period for this CyberOne coverage and which is otherwise covered by this CyberOne coverage; and

   b. Upon payment of an additional premium of 100% of the full annual premium applicable to this CyberOne coverage, a Supplemental Extended Reporting Period of 1 year immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "network security liability suit" of which you first receive notice during said Supplemental Extended Reporting Period for any propagation of malware or denial of service attack occurring before the end of the coverage period for this CyberOne coverage and which is otherwise covered by this CyberOne coverage.

© 2013
Includes copyrighted material of Insurance Services Offices, Inc. with its permission

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 30 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

This insurance, provided during the Supplemental Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Supplemental Extended Reporting Period becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**D. Network Security Liability Defense**

1. We shall have the right and the duty to assume the defense of any applicable "network security liability suit" against you. You shall give us such information and cooperation as we may reasonably require.

2. You shall not admit liability for or settle any "network security liability suit" or incur any defense costs without our prior written consent.

3. If you refuse to consent to any settlement recommended by us and acceptable to the claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such "network security liability suit" independently of us. Our liability shall not exceed the amount for which the claim or suit could have been settled if such recommendation was consented to, plus defense costs incurred by us, and defense costs incurred by you with our written consent, prior to the date of such refusal.

4. We shall not be obligated to pay any damages or defense costs, or to defend or continue to defend any "network security liability suit", after the Network Security Liability Limit has been exhausted.

5. We shall pay all interest on that amount of any judgment within the Network Security Liability Limit which accrues:

   a. After entry of judgment; and

   b. Before we pay, offer to pay or deposit in court that part of the judgment within the Network Security Liability Limit or, in any case, before we pay or offer to pay the

entire Network Security Liability Limit.

These interest payments shall be in addition to and not part of the Network Security Liability Limit.

**E. Other Data Coverage in This Policy**

Some elements of this CyberOne coverage may also be covered under the policy to which this endorsement is attached. If so, this CyberOne coverage will apply as excess, additional coverage. If loss payment has been made under the policy for the same event, the amount of such payment will count towards the deductible that applies to this CyberOne coverage.

**F. Services**

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this endorsement:

1. The effectiveness of such services depends on your cooperation and assistance.

2. We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Network Security Liability Defense Costs"

   a. "Network security liability defense costs" means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "network security liability suit" against you. Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

   b. "Network security liability defense costs" does not mean your salaries or your loss of earnings.

2. "Network Security Liability Settlement Costs"

   a. "Network security liability settlement costs" means the following, when they arise from a "network security liability suit":

      1) Damages, judgments or settlements; and

      2) Defense costs added to that part of any judgment paid by us, when such defense costs are awarded by law or court order; and

      3) Pre-judgment interest on that part of any judgment paid by us.

   b. "Network security liability settlement costs" does not mean:

      1) Civil or criminal fines or penalties

© 2013
Includes copyrighted material of Insurance Services Offices, Inc. with its permission

imposed by law;

2) Punitive or exemplary damages;

3) The multiplied portion of multiplied damages;

4) Taxes; or

5) Matters which may be deemed uninsurable under the applicable law.

3. "Network Security Liability Suit"

a. "Network security liability suit" means a civil proceeding against you in which damages are alleged. Such proceeding must be brought in the United States of America, Puerto Rico or Canada. Such proceeding must be based on an allegation that a negligent security failure or weakness with respect to a computer or other electronic hardware that is owned or leased by you and operated under your control allowed one or more of the following to happen:

1) The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

2) The unintended abetting of a denial of service attack against one or more other systems.

b. "Network security liability suit" includes the following:

1) An arbitration or alternative dispute resolution proceeding that you are required to submit to or which we agree you should submit to; or

2) A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

c. "Network security liability suit" does not mean any demand or action alleging or arising from property damage or bodily injury.

d. "Network security liability suit" does not mean any demand or action brought by or on behalf of someone who is:

1) Your director or officer;

2) Your owner or part-owner; or

3) A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action.

All other provisions of this policy apply.

© 2013
Includes copyrighted material of Insurance Services Offices, Inc. with its permission

COMMERCIAL PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DATA COMPROMISE COVERAGE
### RESPONSE EXPENSES AND DEFENSE AND LIABILITY

Coverage under this endorsement is subject to the following:

**SECTION 1 – RESPONSE EXPENSES**

**Data Compromise**
**Response Expenses Limit:** $50,000
Annual Aggregate

**Sublimits**
   **Named Malware (Sec. 1)** $50,000
   **Forensic IT Review:** $5,000
   **Legal Review:** $5,000
   **PR Services:** $5,000
Any one "Personal Data Compromise"

**Response Expenses Deductible:** $2,500
Any one "Personal Data Compromise"

**SECTION 2 – DEFENSE AND LIABILITY**

**Data Compromise**
**Defense and Liability Limit:** $50,000
Annual Aggregate

**Sublimits**
   **Named Malware (Sec. 2)** $50,000
Any one "Personal Data Compromise"

**Defense and Liability Deductible:** $2,500
Each "Data Compromise Suit"

The following is added as an additional Coverage:

# SECTION 1 – RESPONSE EXPENSES

**DATA COMPROMISE COVERED CAUSE OF LOSS**

Coverage under this Data Compromise Coverage endorsement applies only if all of the following conditions are met:

1. There has been a "personal data compromise"; and

2. Such "personal data compromise" is first discovered by you during the policy period for which this Data Compromise Coverage endorsement is applicable; and

3. Such "personal data compromise" is reported to us

within 60 days after the date it is first discovered by you.

**COVERAGE – SECTION 1**

If the three conditions listed above in DATA COMPROMISE – COVERED CAUSE OF LOSS have been met, then we will provide coverage for the following expenses when they arise directly from the covered cause of loss and are necessary and reasonable. Coverages 4 and 5 apply only if there has been a notification of the "personal data compromise" to "affected individuals" as covered under coverage 3.

1. **Forensic IT Review**

   Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

   This does not include costs to analyze, research or determine any of the following:

   a. Vulnerabilities in systems, procedures or physical security;

   b. Compliance with PCI or other industry security standards; or

   c. The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

   If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

2. **Legal Review**

   Professional legal counsel review of the "personal data compromise" and how you should best respond to it.

   If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

3. **Notification to Affected Individuals**

© 2006, 2009, 2012
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**4. Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals".

a. The following services apply to any "personal data compromise".

   1) Informational Materials

      A packet of loss prevention and customer support information.

   2) Help Line

      A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in b. 1) and 2).

b. The following additional services apply to "personal data compromise" events involving "personally identifying information".

   1) Credit Report and Monitoring

      A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

   2) Identity Restoration Case Management

      As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**5. PR Services**

Professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships.

This includes costs to implement public relations recommendations of such firm. This may include advertising and special promotions designed to retain your relationship with "affected individuals". However, we will not pay for promotions:

a. Provided to any of your directors or employees; or;

b. Costing more than $25 per "affected individual".

**LIMITS – SECTION 1**

The most we will pay under Response Expenses coverage is the Data Compromise Response Expenses Limit indicated for this endorsement.

The Data Compromise Response Expenses Limit is an annual aggregate limit. This amount is the most we will pay for the total of all loss covered under Section 1 arising out of all "personal data compromise" events which are first discovered by you during the present annual policy period. This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

A "personal data compromise" may be first discovered by you in one policy period but cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "personal data compromise" will be subject to the Data Compromise Response Expenses Limit applicable to the policy period when the "personal data compromise" was first discovered by you.

The most we will pay under Response Expenses coverage for loss arising from any "malware-related compromise" is the Named Malware (Sec. 1) sublimit indicated for this endorsement. For the purpose of the Named Malware (Sec. 1) sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise".

The most we will pay under Forensic IT Review, Legal Review and PR Services coverages for loss arising from any one "personal data compromise" is the applicable sublimit for each of those coverages indicated for this endorsement. These sublimits are part of, and not in addition to, the Data Compromise Response Expenses Limit. PR Services coverage is also subject to a limit per "affected individual" as described in 5. PR Services.

Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals". Notwithstanding, coverage for Identity Restoration Case Management services initiated within such one year period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**DEDUCTIBLE – SECTION 1**

Response Expenses coverage is subject to the Response Expenses Deductible indicated for this endorsement. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this endorsement.

The following is added as an Additional Coverage:

# SECTION 2 – DEFENSE AND LIABILITY

**DEFENSE AND LIABILITY COVERED CAUSE OF LOSS**

© 2006, 2009, 2012
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

Coverage under this Data Compromise Coverage endorsement applies only if all three of the conditions in DATA COMPROMISE – COVERED CAUSE OF LOSS are met.

Only with regard to Section 2 – Defense and Liability coverage, the following conditions must also be met:

1. You have provided notifications and services to "affected individuals" in consultation with us pursuant to Response Expenses coverage; and

2. You receive notice of a "data compromise suit" brought by one or more "affected individuals" or by a governmental entity on behalf of one or more "affected individuals"; and

3. Notice of such "data compromise suit" is received by you within two years of the date that the "affected individuals" are notified of the "personal data compromise"; and

4. Such "data compromise suit" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**COVERAGE – SECTION 2**

If all of the conditions listed above in DEFENSE AND LIABILITY – COVERED CAUSE OF LOSS have been met, then we will provide coverage for "data compromise defense costs" and "data compromise liability" directly arising from the covered cause of loss.

**LIMITS – SECTION 2**

The most we will pay under Defense and Liability coverage (other than post-judgment interest) is the Data Compromise Defense and Liability Limit indicated for this endorsement.

The Data Compromise Defense and Liability Limit is an annual aggregate limit. This amount is the most we will pay for all loss covered under Section 2 (other than post-judgment interest) arising out of all "personal data compromise" events which are first discovered by you during the present annual policy period. This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

A "personal data compromise" may be first discovered by you in one policy period but cause covered costs in one or more subsequent policy periods. If so, all covered costs arising from such "personal data compromise" (other than post-judgment interest) will be subject to the Data Compromise Defense and Liability Limit applicable to the policy period when the "personal data compromise" was first discovered by you.

The most we will pay under Defense and Liability coverage for loss arising from any "malware-related compromise" is the Named Malware (Sec. 2) sublimit indicated for this endorsement. For the purpose of the Named Malware (Sec. 2) sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to

be a single "personal data compromise". This sublimit is part of, and not in addition to, the Defense and Liability Limit.

**DEDUCTIBLE – SECTION 2**

Defense and Liability coverage is subject to the Defense and Liability Deductible indicated for this endorsement. You shall be responsible for such deductible amount as respects each "data compromise suit" covered under this endorsement.

# EXCLUSIONS, ADDITIONAL CONDITIONS AND DEFINITIONS APPLICABLE TO BOTH SECTION 1 AND SECTION 2

**EXCLUSIONS**

The following additional exclusions apply to this coverage:

We will not pay for costs arising from the following:

1. Your intentional or willful complicity in a "personal data compromise".

2. Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.

3. Any "personal data compromise" occurring prior to the first inception of this Data Compromise Coverage endorsement or any coverage substantially similar to that described in this endorsement.

4. Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "personal data compromise".

5. Any fines or penalties. This includes, but is not limited to, fees or surcharges from affected financial institutions.

6. Any criminal investigations or proceedings.

7. Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

8. Any "personal data compromise" involving data that is being transmitted electronically, unless such data is encrypted to protect the security of the transmission.

9. Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

10. That part of any "data compromise suit" seeking any non-monetary relief.

**ADDITIONAL CONDITIONS**

The following Additional Conditions apply to all

© 2006, 2009, 2012
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

coverages under this endorsement.

## A. Data Compromise Liability Defense

1. We shall have the right and the duty to assume the defense of any applicable "data compromise suit" against you. You shall give us such information and cooperation as we may reasonably require.

2. You shall not admit liability for or settle any "data compromise suit" or incur any defense costs without our prior written consent.

3. If you refuse to consent to any settlement recommended by us and acceptable to the claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such "data compromise suit" independently of us. Our liability shall not exceed the amount for which the claim or suit could have been settled if such recommendation was consented to, plus defense costs incurred by us, and defense costs incurred by you with our written consent, prior to the date of such refusal.

4. We shall not be obligated to pay any damages or defense costs, or to defend or continue to defend any "data compromise suit", after the Data Compromise Defense and Liability Limit has been exhausted.

5. We shall pay all interest on that amount of any judgment within the Data Compromise Defense and Liability Limit which accrues:

   a. after entry of judgment; and

   b. before we pay, offer to pay or deposit in court that part of the judgment within the Data Compromise Defense and Liability Limit or, in any case, before we pay or offer to pay the entire Data Compromise Defense and Liability Limit.

   These interest payments shall be in addition to and not part of the Data Compromise Defense and Liability Limit.

## B. Duties in the Event of a "Data Compromise Suit"

1. If a "data compromise suit" is brought against you, you must:

   a. Immediately record the specifics of the "data compromise suit" and the date received; and

   b. Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "data compromise suit" is first received by you.

   c. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "data compromise suit";

   d. Authorize us to obtain records and other

information;

   e. Cooperate with us in the investigation, settlement or defense of the "data compromise suit";

   f. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of loss to which this insurance may also apply; and

   g. Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "data compromise suit".

2. You may not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

3. If you become aware of a claim or complaint that may become a "data compromise suit", you shall promptly inform us of such claim or complaint.

## C. Due Diligence

You agree to use due diligence to prevent and mitigate costs covered under this endorsement. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

1. Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

2. Providing and maintaining appropriate computer and Internet security;

3. Maintaining and updating at appropriate intervals backups of computer data;

4. Protecting transactions, such as processing credit card, debit card and check payments; and

5. Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

## D. Legal Advice

We are not your legal advisor. Our determination of what is or is not covered under this Data Compromise Coverage endorsement does not represent advice or counsel from us about what you should or should not do.

## E. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Data Compromise Coverage for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under

© 2006, 2009, 2012
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

Additional Condition F. Service Providers. You must provide the following at our pre-notification consultation with you:

1. The exact list of "affected individuals" to be notified, including contact information.

2. Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

3. The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

**F. Service Providers**

1. We will only pay under this Data Compromise Coverage for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Data Compromise Coverage. We will not unreasonably withhold such approval.

2. Prior to the Pre-Notification Consultation described in Additional Condition E. above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

   a. Such alternate service provider must be approved by us;

   b. Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

   c. Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

**G. Services**

The following conditions apply as respects any services provided to you or any "affected individual" by us, our designees or any service firm paid for in whole or in part under this Data Compromise coverage:

1. The effectiveness of such services depends on your cooperation and assistance.

2. All services may not be available or applicable to all individuals. For example, "affected individuals" who are minors or foreign nationals may not have credit records that can be provided or monitored.

Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

3. We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

4. You will have a direct relationship with the professional service firms paid for in whole or in part under this coverage. Those firms work for you.

**DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

1. "Affected Individual" means any person who is your current, former or prospective customer, client, member, owner, director or employee and whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this endorsement. This definition is subject to the following provisions:

   a. "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

   b. An "affected individual" must have a direct relationship with your interests as insured under this policy. The following are examples of individuals who would not meet this requirement:

      1) If you aggregate or sell information about individuals as part of your business, the individuals about whom you keep such information do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

      2) If you store, process, transmit or transport records, the individuals whose "personally identifying information" or "personally sensitive information" you are storing, processing, transmitting or transporting for another entity do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

      3) You may have operations, interests or properties that are not insured under this policy. Individuals who have a relationship with you through such other operations, interests or properties do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of the operation insured

© 2006, 2009, 2012
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

under this policy.

c. An "affected individual" may reside anywhere in the world.

2. "Data Compromise Defense Costs" means expenses resulting solely from the investigation, defense and appeal of any "data compromise suit" against you. Such expenses must be reasonable and necessary. They will be incurred by us. They do not include your salaries or your loss of earnings. They do include premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond.

3. "Data Compromise Liability"

a. "Data compromise liability" means the following, when they arise from a "data compromise suit":

1) Damages, judgments or settlements to "affected individuals";

2) Defense costs added to that part of any judgment paid by us, when such defense costs are awarded by law or court order; and

3) Pre-judgment interest on that part of any judgment paid by us.

b. "Data compromise liability" does not mean:

1) Damages, judgments or settlements to anyone who is not an "affected individual";

2) Civil or criminal fines or penalties imposed by law;

3) Punitive or exemplary damages;

4) The multiplied portion of multiplied damages;

5) Taxes; or

6) Matters which may be deemed uninsurable under the applicable law.

4. "Data Compromise Suit"

a. "Data Compromise Suit" means a civil proceeding in which damages to one or more "affected individuals" arising from a "personal data compromise" or the violation of a governmental statute or regulation are alleged. Such proceeding must be brought in the United States of America, Puerto Rico or Canada. "Data compromise suit" includes:

1) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

2) Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent; or

3) A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

b. "Data compromise suit" does not mean any demand or action brought by or on behalf of someone who is:

1) Your director or officer;

2) Your owner or part-owner; or

3) A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Data compromise suit" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

c. "Data compromise suit" does not mean any demand or action brought by or on behalf of an organization, business, institution or any other party that is not an "affected individual" or governmental entity.

5. "Identity Theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

6. "Malware-Related Compromise" means a "personal data compromise" that is caused, enabled or abetted by a virus or other malicious code that, at the time of the "personal data compromise", is named and recognized by the CERT® Coordination Center, McAfee®, Secunia, Symantec or other comparable third party monitors of malicious code activity.

7. "Personal Data Compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

a. At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

1) You; or

2) A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, processing, transmission or transportation of such information.

b. "Personal data compromise" includes disposal

© 2006, 2009, 2012
includes material © ISO Services, Inc., with permission
as well as other copyrighted material

or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

1) The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

2) Such disposal or abandonment must take place during the time period for which this Data Compromise Coverage endorsement is effective.

c. "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

d. All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

8. "Personally Identifying Information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

9. "Personally Sensitive Information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

All other provisions of this policy apply.

© 2006, 2009, 2012
includes material © ISO Services, Inc., with permission
as well as other copyrighted material